J-S14038-16

2016 PA Super 50

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| HECTOR COLON-PLAZA, | |
| Appellant | No. 1159 MDA 2015 |

Appeal from the Judgment of Sentence June 3, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002452-2014

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED FEBRUARY 25, 2016**

Hector Colon-Plaza ("Appellant") appeals from the twenty-five to fifty year judgment of sentence imposed under the mandatory minimum sentencing scheme for recidivist sexual offenses at 42 Pa.C.S.A. § 9718.2.[1]

---

[1] The Sentencing Code, 42 Pa.C.S. §§ 9701–9799.9, at Section 9718.2 (Sentences for sex offenders), provides for a mandatory minimum and maximum sentence as follows in pertinent part:

**§ 9718.2. Sentences for sexual offenders**

**(a) Mandatory sentence.--**
(1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total

*(Footnote Continued Next Page)*

---

*Former Justice specially assigned to the Superior Court.

Specifically, he raises sufficiency and weight of the evidence challenges to guilty verdicts on four counts of Sexual Abuse of Children, Child Pornography[2] and one count of Criminal Use of a Communication Facility,[3] asserts a lack of due notice regarding the Commonwealth's intent to seek a

_(Footnote Continued)_ ─────────────

confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon such conviction, the court shall give the person oral and written notice of the penalties under paragraph (2) for a third conviction. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more offenses arising from separate criminal transactions set forth in section 9799.14 or equivalent crimes under the laws of this Commonwealth in effect at the time of the commission of the offense or equivalent crimes in another jurisdiction, the person shall be sentenced to a term of life imprisonment, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required.

**(b) Mandatory maximum.--**An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

**(c) Proof of sentencing.--**The provisions of this section shall not be an element of the crime, and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. . . .

42 Pa.C.S. § 9718.2.

[2] 18 Pa.C.S. § 6312(d).

[3] 18 Pa.C.S. § 7512.

mandatory minimum sentence, and claims his mandatory sentence violates federal and state constitutional prohibitions against cruel and unusual punishments. We affirm.

In 2010, Appellant pled guilty to two counts of indecent assault of a minor and received two years' probation, which he completed. On April 17, 2014, the Pennsylvania Office of Attorney General ("OAG") obtained a search warrant for Appellant's residence on evidence that OAG law enforcement software enabling agents to detect the location of computers offering child pornography for download had twice during a four-month period downloaded videos and images of child pornography offered from an internet-based, peer-to-peer file-sharing program[4] in use at Appellant's residence. Pursuant to a court order, Comcast Cable Communications supplied account information naming Appellant as the wireless internet subscriber. Authorities further determined that wireless internet access from this address was locked and required a password.

Appellant shared the residence with his girlfriend, Angela Gonzalez, and she was home when authorities executed the search warrant. OAG agents confiscated a non-functioning digital tablet, three cell phones, and two laptop computers, one of which was stored in a hallway closet. It was

---

[4] The internet-based, peer-to-peer program in this case, Ares, is available online as a free, downloadable program enabling a user to place files in and retrieve and download files from a shared folder accessible to other Ares users.

this HP laptop, alone, which contained an Ares file-sharing program, and within this program were files containing the two videos and two images of child pornography captured by the OAG computer. Further examination of the laptop disclosed a username of "HECTOR," a most recent log-on under this username of April 16, 2014, just one day before service of the warrant, and placement of the child pornography files in a file path under this username. N.T. Trial, 3/3/15, at 205-08.

OAG agents obtained Appellant's work address from Ms. Gonzalez and interviewed him at his office after advising him of his ***Miranda***[5] rights, which he temporarily waived. In his recorded statement, Appellant admitted that he and Ms. Gonzalez kept two computers and one digital tablet in the residence and knew each other's passwords. He denied recent use of the HP laptop computer stored in the hall closet, although he admitted to knowing its password and using it in the past to share music and video files.

Authorities arrested Appellant and charged him with two counts of disseminating child pornography[6] in addition to the charges referenced above. On March 4, 2015, a jury found Appellant not guilty of disseminating child pornography but guilty on all counts of possession of child pornography and criminal use of communication facilities. Prior to sentencing, the Commonwealth notified Appellant that it would seek a mandatory minimum

---

[5] ***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602 (1966).
[6] 18 Pa.C.S.A. § 6312(c).

sentence of 25 years under section 9718.2, *supra*, a recidivist statute addressing sexual offenders.  At Appellant's sentencing hearing, the court noted that a Sexual Offenders Assessment Board determined Appellant was not a sexually violent predator.  Nevertheless, finding Appellant was a recidivist sex offender as contemplated under the mandatory minimum sentencing scheme, the court imposed a mandatory 25 to 50-year term of incarceration.  This timely appeal followed.

Appellant raises the following questions for our review:

I.    **DID THE COMMONWEALTH PROVIDE INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO ESTABLISH [APPELLANT'S] GUILT BEYOND A REASONABLE DOUBT ON THE CHARGES OF SEXUAL ABUSE OF CHILDREN[,] POSSESSION OF CHILD PORNOGRAPHY AND CRIMINAL USE OF A COMMUNICATION FACILITY?**

II.   **WAS [APPELLANT'S] GUILTY VERDICT ON THE CHARGES OF SEXUAL ABUSE OF CHILDREN[,] POSSESSION OF CHILD PORNOGRAPHY AND CRIMINAL USE OF A COMMUNICATION FACILITY AGAINST THE WEIGHT OF THE EVIDENCE?**

III.  **IS THE MANDATORY MINIMUM SENTENCE OF 25 YEARS TO 50 YEARS IMPRISONMENT THAT [APPELLANT] RECEIVED UNCONSTITUTIONAL BECAUSE IT VIOLATES THE 8TH, [SIC] AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 13 OF THE PENNSYLVANIA CONSTITUTION PROVISIONS AGAINST CRUEL AND UNUSUAL PUNISHMENT BECAUSE IT IS GROSSLY DISPROPORTIONATE TO THE CRIMES [APPELLANT] IS CONVICTED OF?**

IV.   **DID THE TRIAL COURT ERR IN IMPOSING THE MANDATORY MINIMUM SENTENCE PURSUANT TO 42 Pa.C.S.A. § 9718.2 COMMONWEALTH FAILED TO**

**PROVIDE [APPELLANT] WITH NOTICE OF THE APPLICABILITY OF THE STATUTE PRIOR TO TRIAL?**

Appellant's brief at 4.

Our standard of review for sufficiency claims is well-settled:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Robertson-Dewar***, 829 A.2d 1207, 1211 (Pa.Super. 2003).

Section 6312(d), Sexual Abuse of Children, Child Pornography, provides that "[a]ny person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense." 18 Pa.C.S.A. § 6312(d).

> With regard to § 6312, the Commonwealth must prove the following three (3) elements beyond a reasonable doubt in order to convict an individual of this offense: there must be a depiction of an actual child engaged in a prohibited sexual act or a simulated sexual act; the child depicted must be under the age of eighteen (18); and the defendant must have knowingly possessed or controlled the depiction.

*Commonwealth v. Koehler*, 914 A.2d 427, 436 (Pa.Super. 2006) (emphasis omitted).[7]   Section 7512, Criminal Use of a Communication Facility, provides "[a] person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title.  18 Pa.C.S.A. § 7512(a).

According to Appellant, a lack of direct evidence connecting him with child pornography on the laptop proved fatal to the Commonwealth's case, as circumstantial evidence failed to allow for a reasonable inference of his guilt.  In this regard, he posits that evidence showing he was the internet subscriber and profile user on the HP laptop could not, alone, legally suffice to prove he knowingly controlled or possessed child pornography, particularly where Gonzalez had equal access to the laptop.  Moreover, he continues, a mere two-hour surveillance of his residence failed to rule out

---

[7] This Court's decision in **Koehler** pre-dates the first incarnation of section 6312(d) which added intentional viewing to its list of proscribed conduct. **See** Act of July 14, P.L. 63, No. 15, § 1, effective in Sept. 14, 2009.  As such, **Koehler** includes only knowing possession or control in setting forth the elements of a section 6312 offense.  Nevertheless, **Koehler's** recitation of the burden of proof governs herein as the allegations against Appellant were limited to knowing possession or control.

the reasonable possibility that houseguests and visitors had access to the laptop, which, he argues, "was open and available to anyone in the home." Appellant's brief at 12.

Appellant's account of the Commonwealth's evidence is self-servingly incomplete. Not only was he the internet subscriber, profile user of the HP laptop, and one of just two residents living at the address,[8] he also admitted to having access to the laptop, knowing its password, and, significantly, using its Ares file-sharing program in the past. Moreover, an OAG agent testified that investigators determined the digital tablet no longer worked and found no pornography of any kind on the Gateway laptop computer Ms. Gonzalez claimed was hers. N.T. at 159.

In contrast, forensic examination of the HP laptop revealed an approximately three-year history in which apparent images of child pornography were frequently sought and viewed under Appellant's username. N.T. at 210-11. A 56-page report of activity on the Ares program also identified a three-year history of downloading videos bearing well-known child pornography acronym titles. N.T. at 212-15. Such titles appeared on nearly every page of the report. *Id*. Moreover, a 36-page report listed all search terms entered into the laptop's Ares program since its

_____

[8] An OAG agent testified that agents cross-checked Appellant's residential address with driver's license information and the "CLEAR" law enforcement criminal record website and found two matches: one for Appellant and one for Ms. Gonzalez. N.T. at 246.

2011 installation, and on the first page, alone, the OAG agent identified seven word searches relating to child pornography. N.T. at 214-15. This report also reflected many instances in which the same search terms were repeated "over and over again," consistent with the common practice of an habitual user attempting to elude detection by seeking familiar materials that enable quick access, viewing, and deletion, the OAG offered in his expert opinion. N.T. at 216. Pertinent, too, was the time of day in which the laptop's user placed the child pornography files into the Ares program. Forensic examination of the laptop determined that each file was created during evening and nighttime hours ranging from 8:00 p.m. to after midnight, with the last download into Ares occurring on the night before authorities served the warrant. N.T. at 205-07. Evidence established that Appellant worked a daytime job. N.T. at 130-32.

Viewing the sum of this evidence and all reasonable inferences drawn from it in a light most favorable to the verdict winner, we discern no merit to Appellant's sufficiency challenge. There is no reasonable dispute that someone in Appellant's apartment placed child pornography in the HP laptop's Ares program. One of just two persons residing in his apartment, Appellant clearly had access to and control over the HP laptop and the child pornography files it contained. The laptop's username was his name, he knew the password, and he admitted using the Ares file-sharing program on the HP laptop in the past. Forensic study of the laptop revealed a three-year history of frequent child pornography-related word searches, image viewing,

and video downloading, marked by a pattern of repeatedly viewing the same materials in a manner suggestive of a single user. All recent child pornography activity for which Appellant was charged occurred during nighttime, including midnight of April 16, 2014, just hours before the morning service of the search warrant; evidence indicated Appellant worked in the daytime.

Nor does evidence support Appellant's position that the laptop was open and accessible to guests, as authorities found the laptop secreted in a hallway closet. In fact, only the Gateway laptop lay in the open, and it contained no pornography of any kind. N.T. at 127, 159-60. Neither does Appellant's attempt to enlarge the number of potential users gain any traction when read against the record. At trial, an OAG agent discussed the law-enforcement resources she used to confirm that Appellant and Ms. Gonzalez were the only two residents at the address, and she observed no other persons entering or leaving Appellant's residence during an approximately two-hour surveillance of the property. N.T. at 157-58, 245-46. In short, evidence placed no one other than Appellant and Ms. Gonzalez in a position to control or possess the illicit materials contained in the HP laptop.

Appellant's notion that the Commonwealth must disprove unsubstantiated claims of access by unspecified persons is at odds with Pennsylvania jurisprudence on constructive possession, even where joint control and equal access are present:

The existence of constructive possession of a controlled substance is demonstrated by "the ability to exercise a conscious dominion over the illegal substance: the power to control the [illegal substance] and the intent to exercise that control." [**Commonwealth v.**] **Valette**, 531 Pa. [384,] 388, 613 A.2d [548,] 550 (quoting **Commonwealth v. Macolino**, 503 Pa. 201, 206, 469 A.2d 132, 134 (1983)). An "intent to maintain a conscious dominion may be inferred from the totality of the circumstances." **Macolino**, 503 Pa. at 206, 469 A.2d at 134. Thus, circumstantial evidence may be used to establish constructive possession of the illegal substance. **Id.** Additionally, our Court has recognized that "[c]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." **Valette**, 531 Pa. at 388, 613 A.2d at 550.

**Commonwealth v. Johnson**, 611 Pa. 381, 407, 26 A.3d 1078, 1093-94 (2011) (footnote omitted). **Accord Commonwealth v. Mudrick**, 510 Pa. 305, 307, 507 A.2d 1212, 1213 (1986) (jury could find constructive possession where contraband was found in an area where defendant and his paramour had joint control and equal access). In the context of a section 6312(d) appeal, this Court's panel decision in **Koehler**, **supra**, applied this precept in finding evidence sufficient to prove the defendant's knowing control over child pornography in a household computer:

Likewise without merit are [a]ppellant's sufficiency claims based on: others in his home, *to wit,* his aunt, brother, and friend all having equal access to the computer; no direct evidence that he ever viewed the materials at issue; no direct evidence that [a]ppellant had been the one to subscribe and pay for internet service; and no direct evidence that [a]ppellant was the one to have visited the pornographic websites from where the twelve videos were obtained and paid for the videos. Each argument implicates the jury's factual determinations, and, as we note above, it is the province of the jury to pass on the weight to be accorded evidence and to assess the credibility of witnesses. [ ] Here, the jury clearly disbelieved defense theories on

[a]ppellant's access to and activities on the computer in question, and there exists no reason to disturb the jury's determination on appeal.

Nevertheless, it is clear that sufficient evidence existed to support the jury's determination. The Commonwealth established, *inter alia,* that the computer bore a screen name, systems properties name, and a software registration name all referring in some respect to [a]ppellant's proper name. Furthermore, the Commonwealth established that 12 of the 14 video clips in question were downloaded onto his computer in the early morning before [a]ppellant's work hours began, and the other two videos were downloaded at nearly midnight, after [a]ppellant's work hours. The totality of the circumstances presented at trial thus permitted the jury to infer [a]ppellant's ownership, use, and ability to access the materials at issue such that it was he, and no one else in his aunt's home, who possessed the child pornography at issue.

*Koehler*, 914 A.2d at 437 (internal citation omitted).

We, therefore, conclude that evidence clearly sufficed to find Appellant guilty of all elements of the section 6312(d) offense beyond a reasonable doubt. Moreover, as Appellant predicated his Criminal Use of a Communication Facility sufficiency challenge on this failed section 6312(d) argument, that challenge must also fail.

Appellant next challenges the weight of the evidence offered to support his convictions.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented,

- 12 -

> an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 619 Pa. 423, 432, 64 A.3d 1049, 1055 (2013) (internal citations omitted).

In support of his weight of the evidence claim, Appellant asserts in absolute terms that the lingering effect of having observed the disturbing video and pictorial evidence must have distracted the jury from its task of applying the law to the facts. A jury so overborne was incapable of assessing properly the obvious shortcomings of merely circumstantial evidence and must have convicted Appellant solely as a reaction to the content of the videos and images, Appellant argues. By supplementing this this bare assertion with neither developed argument nor citation to supporting authority, however, he has failed to preserve it. See Pa.R.A.P. 2119(b).

In his third issue comprising two sub-parts,[9] Appellant first advances an Eighth Amendment proportionality challenge to the mandatory minimum sentencing scheme in section 9718.2.[10] In furtherance of this challenge,

---

[9] Appellant's statement of questions presented and his argument section inconsistently enumerate four and three questions, respectively. We elect to follow the argument section's enumeration of issues.

[10] In Appellant's brief are both a "Statement of the Questions Involved" and a heading to argument on this issue in which he avers that the sentencing

*(Footnote Continued Next Page)*

- 13 -

Appellant makes two discrete arguments. First, he maintains his mandatory minimum sentence of 25 years is grossly disproportionate to his crime when viewed against a guideline range sentence of 9 to 16 months, +/- 6 months that would apply to a first-time sex offender committing the same possessory offense and having the same prior record score as he. Second, a finding of gross disproportionality also results when comparing his sentence to the mandatory ten-year minimum sentence applicable to what he calls the "more serious" offense of a first-time forcible rape of a child under 13 years of age under 42 Pa.C.S. § 9781(a), he contends.

> All properly enacted statutes enjoy a strong presumption of constitutionality. ***Commonwealth v. Bullock***, 590 Pa. 480, 487, 913 A.2d 207, 211 (2006), ***cert. denied***, 550 U.S. 941, 127 S.Ct. 2262, 167 L.Ed.2d 1103 (2007); ***In re C.C.J.***, 799 A.2d 116 (Pa.Super. 2002).
>
> Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and

*(Footnote Continued)* ————————————

scheme also violates Article I, Section 13 of the Pennsylvania Constitution and its prohibition against "cruel and unusual" [sic] punishments. ***See*** Pa. Const. art. I, § 13 (prohibiting, *inter alia*, "cruel punishments"). We decline to engage in a state constitutional review of Appellant's mandatory minimum sentence, however, where he has filed a Pa.R.A.P. 1925(b) statement grounding his proportionality challenge exclusively in the Eighth Amendment, ***see Commonwealth v. Harrell***, 65 A.3d 420, 435 (Pa.Super. 2013) (argument not raised in appellant's Rule 1925(b) statement waived on appeal), and has correspondingly briefed an argument invoking Eighth Amendment jurisprudence only, supplying no analysis implicating Article I, Section 13. ***See Commonwealth v. Baker***, 621 Pa. 401, 78 A.3d 1044 (2013) (confining judicial review to Eighth Amendment principles governing sentence proportionality where appellant confined argument to federal constitutional principles and provided no separate analysis under state constitution).

> plainly violates the Constitution. All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. Thus, there is a very heavy burden of persuasion upon one who challenges the constitutionality of a statute.
>
> ***Pennsylvanians Against Gambling Expansion Fund, Inc. et al. v. Commonwealth of Pennsylvania, et al.***, 583 Pa. 275, 292, 877 A.2d 383, 393 (2005) (internal citations omitted). Appellate review of constitutional challenges to statutes, disputes over the legality of a sentence, a court's application of a statute, and general questions of law involve a plenary scope of review. ***Commonwealth v. McCoy***, 895 A.2d 18, 24 (Pa.Super. 2006), [***aff'd***]*,* 601 Pa. 540, 975 A.2d 586 (2009). "As with all questions of law, the appellate standard of review is *de novo*...." ***In re Wilson***, 879 A.2d 199, 214 (Pa.Super. 2005) (*en banc* ).

***Commonwealth v. Shawver***, 18 A.3d 1190, 1193-94 (Pa.Super. 2011)

In ***Baker***, the Pennsylvania Supreme Court addressed whether the mandatory minimum sentencing scheme for recidivist conduct at section 9718.2 ran afoul of the Eighth Amendment. Viewed under a standard of review that presumes them constitutional, the Court observed, such schemes seldom fail to pass muster under the mandated, three-pronged federal approach used to determine their constitutionality:[11]

> "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences which are grossly disproportionate to the crime." ***Commonwealth v. Hall***, 549 Pa. 269, 701 A.2d 190, 209 (1997) (quoting ***Harmelin v. Michigan***, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). . . . In ***Commonwealth v. Spells***, 417 Pa.Super. 233, 612 A.2d 458, 462 (1992) (en banc), the Superior Court applied the three-

---

[11] ***Baker*** includes a review of High Court Eighth Amendment proportionality decisions illustrating that successful challenges to recidivist sentencing schemes and non-capital sentences are "extremely rare." ***Id.*** at 1048-49.

prong test for Eighth Amendment proportionality review set forth by the United States Supreme Court in **Solem v. Helm**, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and determined that a five-year mandatory minimum sentence for offenses committed with a firearm does not offend the Pennsylvania constitutional prohibition against cruel punishments.  The **Spells** court observed that the three-prong **Solem** proportionality test examines: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  **Spells**, 612 A.2d at 462 (quoting **Solem**, 463 U.S. at 292, 103 S.Ct. 3001).  The **Spells** court correctly observed that a reviewing court is not obligated to reach the second and third prongs of the test unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  **Spells**, **supra** at 463 (quoting the controlling opinion of Justice Kennedy in **Harmelin**, **supra** at 1005, 111 S.Ct. 2680).[4]

---

[4] Justice Kennedy's understanding of the first prong of the **Solem** test as a threshold hurdle in establishing an Eighth Amendment violation has been recently cited with approval by the High Court as well.  "A court must begin by comparing the gravity of the offense and the severity of the sentence."  **Graham v. Florida**, 560 U.S. 48, 60–61, 130 S.Ct. 2011, 2022, 176 L.Ed.2d 825 (2010).  In the "rare case" in which this threshold comparison leads to an inference of gross disproportionality, the reviewing court "should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions."  **Id.**  "If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual."  **Id.**, *quoting* **Harmelin**, **supra** at 1005, 111 S.Ct. 2680.

**Baker**, 621 Pa. at 406, 406 n.4, 78 A.3d at 1047, 1047 n.4.

Engaging in a first-prong, threshold stage examination of Baker's section 9718.2 sentence, the Court first assessed the gravity of the possessory offense by drawing upon the United States Supreme Court's

recognition that "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* at 412, 78 A.3d at 1051 (quoting *New York v. Ferber*, 458 U.S. 747, 757, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982)). By creating a permanent record of children's exploitation and abuse, child pornography entails "pernicious secondary effects" harming not only depicted child victims who may encounter such haunting images of themselves throughout their lives, but also child victims who submit to their abuser's demands after viewing images of other children participating in sexual activity, the Court recognized. *Id.* at 413, 78 A.3d at 1051. As such, it reasoned, possessing child pornography itself constitutes a "very grave offense[]" that contributes to the "devastating victimization that child pornography produces[,]" and possessing as a recidivist sex offender additionally contributes to offense gravity. *Id.* at 414, 78 A.3d at 1051.

Turning to the mandatory punishment imposed, the Court acknowledged that a sentence of at least 25 years' imprisonment was lengthy. The Court pointed to the possibility of parole within Baker's expected lifetime, however, as distinguishing it from the life sentence without the possibility of parole invalidated as disproportionate in *Solem*, *supra* (invalidating life sentence without possibility of parole for recidivist non-violent offense of passing a bad check in amount of $100). Discerning no inference of gross disproportionality between Baker's possessory crimes under section 6312 and his section 9718.2 mandatory sentence, the Court

ended its inquiry at this threshold stage without reaching the second and third prong tests of the Eighth Amendment proportionality review.

An additional aspect of *Baker* that is noteworthy for our purposes is how the Court construed Baker's arguments in relation to the three-prong proportionality test. Arguments alluding to lesser sentences for others in Pennsylvania convicted of violating section 6312 "clearly [went] to the second prong of the test[,]" the Court reasoned, as did the argument purportedly identifying an "anomaly" between the length of the section 9718.2 mandatory sentence and the lesser term otherwise applicable to a felony of the second degree. *Id.* at 1052 n.9. Significantly, Appellant's arguments, as detailed above, are virtually identical to these failed arguments in *Baker* judged inapposite to a first-prong, threshold assessment.

Accordingly, where Appellant has developed no first-prong argument supported by authority to distinguish his case from *Baker*, we deem our Supreme Court's Eighth Amendment analysis therein binding upon us and discern nothing in the relationship between Appellants' crime and section 9718.2 mandatory sentence generating an inference of gross disproportionality. We, therefore, reject his Eighth Amendment challenge.

The second part to Appellant's constitutional challenge assails the notice provisions of section 9718.2(c), which, Appellant maintains, afford insufficient time to prepare an adequate defense. In the context of the heightened sentence mandated under the recidivist statute, Appellant

argues, a sentencing defense is adequate only if it sets forth the facts and details underlying predicate prior convictions, particularly where a defendant pled guilty, as reasons unrelated to actual guilt frequently motivate such pleas, Appellant argues. The statute's provision of post-verdict/pre-sentence notice simply fails to accommodate the need for additional time to prepare such a defense, a need that would be satisfied only upon receiving pre-trial notice of the Commonwealth's intent to seek imposition of a section 9718.2 mandatory minimum sentence.

Appellant's argument in this respect is fatally underdeveloped, as it includes no analysis or application of authority in support of his contention as required by Pa.R.A.P. 2119(b). As such, Appellant cannot be said to have carried the "very heavy burden of persuasion upon one who challenges the constitutionality of a statute." **Shawver**, **supra**. Thus, Appellant has waived this final aspect of his third issue.

For the foregoing reasons, judgment of sentence is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2016

- 19 -