J-A06027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY ALAN NORRIS | : | |
| | : | |
| Appellant | : | No. 380 WDA 2020 |

Appeal from the Judgment of Sentence Entered September 24, 2019
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s):  CP-03-CR-0000380-2017

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED: JUNE 7, 2021**

Timothy Alan Norris appeals from the judgment of sentence, entered in the Court of Common Pleas of Armstrong County, after a jury convicted him of one count of sexual abuse of children—dissemination of photographs,[1] fifty counts of sexual abuse of children—possession of child pornography,[2] and one count of criminal use of a communication facility.[3]  After careful review, we affirm.

The trial court set forth the facts of this case as follows:

On January 6 and 7, 2015, Corporal Gerhard Goodyear of the Pennsylvania State Police ("PSP") Computer Crimes Unit was monitoring investigative peer-to-peer ("P2P") file sharing software used by the PSP to combat the dissemination of child

---

[1] 18 Pa.C.S.A. § 6312(c).

[2] 18 Pa.C.S.A. § 6312(d).

[3] 18 Pa.C.S.A. § 7512(a).

pornography. The software operates 24 hours a day and scans the BitTorrent network looking for files associated with recognized child pornography.

On January 6, 2015, between 8:35 a.m. and 10:13 a.m., the PSP software was contacted by a computer using an internet provider ("IP") address associated with [Norris]'s residence. The PSP computer was able to download from that computer several images suspected to be child pornography. The next day, January 7, 2015, between 1:26 a.m. and 2:33 a.m., the PSP computer again was contacted by a computer via an IP address associated with [Norris]'s residence. The PSP computer again was able to download [37] images of suspected child pornography.

Police obtained and executed a search warrant at [Norris]'s residence in May 2015. During the search and subsequent forensic examination of several devices found in [Norris]'s apartment, police found [approximately 1,530] images of suspected child pornography on [Norris]'s computer and two flash drives. [At least one of the images was found on both flash drives, and other images found on the flash drives matched images also found on the desktop.[4]] During a subsequent interview with [Norris], [he] admitted that the computer was his, that it was the only computer in his apartment, that he lived alone, that the two flash drives found in his bedroom were his, that he used the uTorrent software found on his computer to download games, movies, and other media, and that he was familiar with [a] common search term[] used to find child pornography on the internet. [Norris] denied [] having downloaded[, shared,] or [] any knowledge of[,] the illegal images. [PSP also recovered seven images of Norris and his family members from the "Leaving" folder on the desktop.[5] At trial, testimony revealed that Norris's computer originally connected to the PSP investigative software because it was "actively searching for child pornography" on the P2P network.[6] Additionally, testimony revealed that Norris

_____

[4] **See** N.T. Jury Trial, 4/16/19, at 110.

[5] **Id.** at 107.

[6] **Id.** at 33.

moved,[7] and likely renamed,[8] some of the suspected prohibited files after downloading them from the P2P network.]

Trial Court Opinion, 5/20/20, at 3-4.

The Pennsylvania State Police filed charges against Norris on March 29, 2017. Norris waived his right to a preliminary hearing on May 4, 2017, and a jury trial was subsequently held on April 16 and 17, 2019. At the conclusion of the trial, the jury returned guilty verdicts on all counts. The trial court sentenced Norris on September 24, 2019, to an aggregate term of 120 to 240 months' incarceration.[9]

On October 4, 2019, Norris filed a timely post-sentence motion.[10] By order entered October 7, 2019, the trial court appointed new post-sentence counsel, who requested a continuance of the hearing originally scheduled for December 3, 2019. The continuance motion did not request an extension

---

[7] *Id.* at 27; 50-51.

[8] *Id.* at 48-49; 93-94.

[9] The trial court sentenced Norris as follows: 42 to 84 months' imprisonment at Count 2; 42 to 84 months' imprisonment at Count 3; and 36 to 72 months' imprisonment at Count 4, all three sentences to run consecutively, (an aggregate sentence of 10 to 20 years' imprisonment), with 169 days' credit for time served. The court imposed no further penalty on Counts 1 and 5 through 52.

[10] In that motion, Norris alleged that: there was insufficient evidence to sustain the verdicts; the verdict was "against the weight of the evidence, in that the jury found [Norris] guilty [] without being able to properly view the photographs involved," *see* Appellant's Post-Sentence Motion, 10/4/19, at ¶ 3(b); trial counsel was ineffective; and the court should reconsider his sentence where imposition of consecutive sentences was inappropriate. Norris also requested the appointment of new appellate counsel.

pursuant to Pa.R.Crim.P. 720(B)(3)(b). The court granted the motion and continued the hearing to February 4, 2020, three days after the 120-day window for the trial court to make a decision on post-sentence motions, which expired on February 1, 2020. *See* Pa.R.Crim.P. 720(B)(3)(a). Counsel then filed an amended post-sentence motion[11] on February 4, 2020.[12] The clerk of courts entered an order on February 5, 2020, reflecting that the motion was denied as a matter of law. *See* Pa.R.Crim.P. 720(B)(3)(c). [Norris] filed a notice of appeal on March 4, 2020, and on March 5, 2020, the trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained

_____

[11] In the amended post-sentence motion, Norris further alleged that: the verdict was against the weight of the evidence in light of Jennifer K. Palmer's trial testimony; Norris was supplied with ineffective assistance of counsel; and resentencing was required before a different sentencing judge.

[12] We note that a defendant's notice of appeal must be filed within 30 days of the entry of the order denying post-sentence motions. *See* Pa.R.Crim.P. 720(A)(2)(b). Here, although the clerk of courts was required to enter an order on February 1, 2020, reflecting that Norris's post-sentence motions were denied by operation of law, *see id.* at (B)(3)(c), the clerk of courts did not enter such an order until February 5, 2020. We have previously held that the clerk of court's failure to enter such an order does not defeat our jurisdiction over a claim where, as here, that failure represents a breakdown in court operations and processes. *See Commonwealth v. Khalil*, 806 A.2d 415, 420 (Pa. Super. 2002) (citing *Commonwealth v. Braykovich*, 664 A.2d 133, 135 (Pa. Super. 1995)). Nevertheless, we may not address Norris's claims raised in his February 4, 2020 amended post-sentence motion. *See Commonwealth v. Santone*, 757 A.2d 963, 966 (Pa. Super. 2000) (trial court's modification of sentence after 120-day period to decide post-sentence motions deemed nullity for lack of jurisdiction because post-sentence motions were denied by operation of law). We will therefore proceed only to review the merits of the claims preserved in Norris' October 4, 2019 post-sentence motion.

of on appeal within 21 days. Norris filed his concise statement on May 8, 2020.[13]

On appeal, Norris raises the following issues for our review:

>    (1)    Did the trial court err in denying [Norris]'s post-sentence motion seeking a new trial on the basis that the evidence presented by the Commonwealth at trial was insufficient to sustain the verdict?

---

[13] Due to the statewide judicial emergency declared as a result of the COVID-19 pandemic, all notices of appeal due to be filed between March 19, 2020, and May 8, 2020, are deemed to have been timely filed if they were filed by close of business on May 11, 2020. **See In Re: General Statewide Judicial Emergency**, Nos. 531 and 532 Judicial Administrative Docket, at 5, Section III (Pa. filed April 28, 2020). The trial court interpreted these orders to additionally extend the deadline for filing Norris's Rule 1925(b) concise statement. **See** Trial Court Opinion, 5/20/20 at 2 n.4. This was error since

>    Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court *sua sponte*, and the Rule applies notwithstanding an appellee's request not to enforce it[.]

**Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011).

Here, the trial court ordered Norris to file his Rule 1925(b) statement within 21 days of March 5, 2020. Despite Norris's untimely-filed Rule 1925(b) statement, this Court may consider the merits of his appeal where the untimeliness is considered *per se* ineffectiveness. **See Commonwealth v. Thompson**, 39 A.3d 335, 340 (Pa. Super. 2012) ("When counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues[,] we need not remand and may address the merits of the issues presented."). The court addressed Norris's preserved issues in its Rule 1925(a) opinion; therefore, we may proceed to the merits of his appeal.

(2)     Did the trial court err in denying [Norris]'s post-sentence motion seeking a new trial on the basis that the jury's verdict was contrary to the weight of the evidence presented at trial[?]

Appellant's Brief, at 13 (unnecessary capitalization omitted).

Norris first challenges the sufficiency of the evidence to sustain all of his convictions. Specifically, Norris claims that the Commonwealth failed to prove that Norris **knowingly disseminated** and possessed prohibited material. Appellant's Brief, at 23. Norris supports this claim by reasoning that the Commonwealth's only evidence on his mind state was that Norris used "uTorrent" software, and that that software included a feature where files are automatically made available to other parties for download. Norris supports his argument by claiming that Corporal Goodyear testified that:

> This is actually the installation process for the program uTorrent 3.4.2. This is the version of software that was reportedly being used at the time tha[t] I conducted the investigative downloads in reference to this case. This particular version of software was released on January 2, 2015. . . . We click ["]next["], and now we see the end user license agreement. With uTorrent it is very interesting because within their user agreement, it specifically tells the user that[,] in using this program[,] it will be sharing back out into the network. . . . "Your use of the software to download files will in turn enable other users to download pieces of those files from you[, t]hereby maximizing download speeds for all users. In the software[,] only files that you are explicitly downloading or sharing or have downloaded and shared through BitTorrent,[14] will be made available to others."

N.T. Jury Trial, 4/16/20, at 24-25.

_____

[14] Corporal Goodyear explained that BitTorrent acquired uTorrent and that they are, for all intents and purposes, the same. **See** N.T. Jury Trial, 4/16/20, at 13.

Norris argues that evidence that an individual has accepted an end user agreement for any software or service, in the absence of any other evidence as to the knowing or intentional dissemination of material, is insufficient to establish the *mens rea* element of dissemination beyond a reasonable doubt. Appellant's Brief at 25-26. Moreover, Norris claims that Corporal Goodyear misled the jury when he testified that:

> In other words, [] on your Windows computer you have a folder specifically for pictures. I can share as little or as much of that folder as I want to, **but only those files that I specifically designate will be shared**. It will not randomly go out onto your computer looking for other files from different locations to share out. **It is only if the user specifically designates it to be shared**.

N.T. Jury Trial, 4/16/20, at 25 (emphasis added). Norris reasons that Corporal Goodyear's testimony, when taken as a whole, leads to "the inference [] that[,] for a user to share any file, including both ones existing prior to the download and installation of the uTorrent software and files specifically downloaded using uTorrent, that the[ user] must[,] in fact[,] specifically designate that file for sharing within the uTorrent software." Appellant's Brief, at 26-27. Norris notes that the trial court relied on this very inference in concluding that the evidence was sufficient to prove Norris acted with the necessary *mens rea*.[15] Following our review of the record, we disagree and

---

[15] The trial court reasoned as follows:

> Obviously, files containing child pornography were shared from Defendant's computer because they were downloaded from that

*(Footnote Continued Next Page)*

find that Corporal Goodyear's testimony, when read as a whole, clearly indicated that files were automatically uploaded, or "seeded," subsequent to their download using the P2P software, and, we find that the Commonwealth adduced sufficient evidence to sustain each of Norris's convictions.

Our standard of review for a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the

_____

location by the PSP's software. **The person using uTorrent from Defendant's computer would have had to designate those files to be shared among the rest of the users on the BitTorrent network. This fact, coupled with the above-referenced evidence** that Defendant knew that these images were on his computer, **was evidence sufficient to permit the jury to conclude that the Defendant intended to, and did, share files containing child pornography to other users** on the network.

Trial Court Opinion, 5/20/20, at 7 (emphasis added).

credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525-26 (Pa. Super. 2016) (quoting *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1211 (Pa. Super. 2003)).

We have previously found that

[a] person is guilty of sexual abuse of children, dissemination of photographs, videotapes, computer depictions, and films, if he knowingly possesses for the purpose of sale, distribution, delivery, dissemination, transfer, display or exhibition to others, any computer depiction depicting a child under the age of eighteen years engaging in a prohibited sexual act or in the simulation of such act[.]

*Commonwealth v. Sauers*, 159 A.3d 1, 11 (Pa. Super. 2017) (quoting 18 Pa.C.S.A. § 6312(c)) (internal quotation marks, brackets, and ellipses omitted).

Additionally, "[t]o establish possession of computerized child pornography, the Commonwealth must prove that the defendant intentionally viewed or knowingly possessed or controlled any computer depiction depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act." *Commonwealth v. Green*, 204 A.3d 469, 485 (Pa. Super. 2019) (quoting *Commonwealth v. Davidson*, 938 A.2d 198, 213 (Pa. 2007)) (internal quotation marks, brackets, and ellipses omitted); *see also* 18 Pa.C.S.A. § 6312(d). "Prohibited sexual act" is defined as "[s]exual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual

stimulation or gratification of any person who might view such depiction." 18 Pa.C.S.A. § 6312(g).

Finally, "a person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title." *Colon-Plaza*, *supra* at 526 (citing 18 Pa.C.S.A. § 7512(a)) (brackets omitted).

Here, the record belies Norris's claims that Corporal Goodyear's testimony was misleading and that the Commonwealth failed to prove the *mens rea* elements of Norris's possession and dissemination of child pornography convictions with sufficient evidence.

First, contrary to Norris's claims, Corporal Goodyear's testimony, when read as a whole, specifically clarified that automatic uploading, or "seeding," occurs once the file is downloaded,[16] and that a user may change a file such

---

[16] In addition to his explanation of the end-user agreement, Corporal Goodyear testified regarding automatic uploading as follows:

> Once we actually click ["]okay["] or ["]next["], it will start downloading by default. It tells you the progress, how much you have gotten and it tells you your download speed and your upload speed. In other words, how much you are giving back out. Again, another indicator, that you are in fact sharing on the network.
>
> **Once you are done, it then tells you that you are seeding.** Seeding is simply a way of saying that[,] for this particular torrent and payload, **I possess everything that makes up that payload and I am sharing it all back out onto the network.**

N.T. Jury Trial, 4/16/20, at 29 (emphasis added).

that it would no longer be shared into the uTorrent/BitTorrent network.[17]
Indeed, some of the files found on Norris's computer were relocated, and likely
renamed, but we can infer that this was not the case for all of the files—at
least at the time PSP downloaded them from the P2P network, since the PSP
was, in fact, able to download them from Norris. *See supra* at n.17.

Additionally, regarding Norris's intent to disseminate and possess the
prohibited material, we note that the jury heard evidence that: Norris lived
alone; the images at issue were found on his home computer; Norris's
computer had uTorrent and CCleaner[18] software manually installed on it; the

---

[17] Corporal Goodyear explained to the jury:

> [S]o with BitTorrent—let's say I am sharing a payload. Let's say
> that I am a seeder. I am someone who possesses all of it and I
> am sharing the files back out onto the network; if I change the
> name of one of those files as I am sharing it, BitTorrent or
> uTorrent will automatically recognize that the information that is
> referenced by the payload has changed and it will stop sharing
> that data back out onto the network.
>
> Likewise, if I take the download folder that I am sharing and while
> I am sharing it[,] I move it to another location such as the
> desktop, the program will stop sharing. Even if I move it after the
> fact—let's say I shut uTorrent down and move the folders or files
> or rename any of them; when I start uTorrent back up again, it
> will not share those folders or files back out because those
> locations have changed. In other words, [the PSP] would not be
> able to get any of those downloads [through the network from
> Norris] if any of those things happened.

*Id.* at 51.

[18] Corporal Bernard Novak testified that CCleaner is:

*(Footnote Continued Next Page)*

subject images were also found on flash drives that Norris admitted were his; the flash drives were found in Norris's bedroom and forensics revealed they were previously connected to his computer; Norris knew the password for the only operational user account on the computer; Norris was the registered subscriber of the internet service associated with the IP addresses from which the images were disseminated to the PSP investigative software; Norris used a corded connection to his modem as opposed to WiFi internet access, which precluded any likelihood that outside devices connected to his internet; some the subject images on Norris's computer had been manually moved from the default uTorrent directory folder to highly organized and categorized folders which were renamed, after their download, on the desktop of his user account; images matched between the flash drives, as well as between the flash drives and desktop folders; more than one-thousand-five-hundred images of suspected child pornography were found contained between Norris's flash drives and the desktop; and, Norris admitted he was familiar with at least one of the common search terms used to find child pornography on the internet. We find this evidence was more than sufficient to establish Norris's knowledge of his dissemination and possession of the child pornography images

---

a program that is used by an individual to delete files that are either unwanted or they would like to get rid of internet history, system files. You can set it up to delete different things automatically to clean the computer. . . . [It] changes some of the parts of the file, so you will get a ["]zzz["] pattern. . . . That pattern was evidenced in some of those files that we recovered.

*Id.* at 80-81.

downloaded by the PSP and found on his computer's desktop and flash drives. *See Sauers*, *supra* at 12 (evidence sufficient to establish defendant's knowledge of dissemination where Commonwealth presented evidence that law enforcement actually downloaded and obtained materials, including five complete files, from Appellant's computer that were available to other users on same file-sharing network); *see also Colon-Plaza*, *supra* at 527 (evidence sufficient to establish possession of child pornography where defendant was one of two persons residing in his apartment, Appellant clearly had access to and control over HP laptop and child pornography files it contained, laptop's username was his name, he knew password, and admitted using file-sharing program on HP laptop in past, forensic study revealed laptop contained three-year history of frequent child pornography-related word searches, image viewing, and video downloading, which often occurred at nighttime and defendant had daytime job).[19]  Additionally, since Norris's

---

[19] Norris argues that "the record is devoid of an opportunity for the jury to actually view and make a determination of 50 specific images for which they rendered a guilty verdict as containing images of a child under the age of 18 performing or simulating a prohibited sexual act."  Appellant's Brief, at 36. We find this claim to be meritless.

At trial, Corporal Goodyear showed the jury a set of "thumbnail" images of the images that were contained within the folders on Norris's computer desktop. *See* N.T. Jury Trial, 4/16/20, at 45-47.  Also, Corporal Novak testified regarding the specific images found on Norris's computer as follows:

> Q.  Corporal, I am showing you what is marked here as Exhibit 9. **Can you tell me what exhibit 9 is?**

*(Footnote Continued Next Page)*

A. This is a list of images and paths that I found. **These are child pornography images.** They were found in the desktop on the folder either [“]Newer[”] or [“]Newtice.[”]

Q. I want to verify, you are referring to them here as child pornography. **Is there a basis for calling it that as** [] **opposed to just saying these are images?**

A. **These images show—many of them it is either a prepubescent or pubescent girl. She is nude. Her breasts are exposed, her buttocks are exposed, her vagina is exposed in sexualized positions. That would qualify as child pornography.**

[Defense Attorney:] At this point[,] I would just ask the [c]ourt to perhaps instruct the [j]ury that ultimately it would be their decision to make.

[The Court:] That is correct. I will briefly remind the [j]ury, that is why you are here as a jury today. That is part of your determination as to whether those meet the definition I will give you at the end of trial or not.

[Commonwealth Attorney:] If the [c]ourt—I could have the trooper instructed to say suspected child pornography.

[The Court:] As long as the [j]ury understands that the trooper's testimony is not necessarily binding on them. That is what the jury is here to decide.

Q. Exhibit 9—[w]here are these 206 images from?

A. 205 of them, I believe, are from the [“]Newer[”] folder, which is found on the desktop. Then I believe one of the images, the 206th image, is from the [“]Newtice[”] folder, which is also found on the desktop.

Q. Do those appear to be the 206 images that you collected from [Norris]'s computer?

A. Yes, sir.

N.T. Jury Trial, 4/16/20, at 89-91 (emphasis added). Here, Corporal Novak's testimony that Exhibit 9 contained 206 photos of child pornography, which
*(Footnote Continued Next Page)*

- 14 -

challenge to his conviction for criminal use of a communication facility was predicated on his challenges to his other convictions, that challenge also fails. *See Colon-Plaza*, *supra* at 529 ("[A]s Appellant predicated his [c]riminal [u]se of a [c]ommunication [f]acility sufficiency challenge on [his] failed section 6312(d) argument, that challenge must also fail.").

Norris also raises a challenge to the weight of the evidence. It is well-settled that such claims must be raised with the trial judge in a motion for a new trial. Pa.R.Crim.P. 607. Appellants must preserve weight claims in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. *Id.*; *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in its waiver, even if the trial court addresses the issue in its opinion. *Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014). "The purpose of [Rule 607 is] to make it clear that a challenge to the weight of the evidence claim must be raised with the trial court or it will be waived. Appellate review of a weight of the evidence claim is limited to a review of the judge's exercise of

---

term he defined for the jury's clarity, sufficed to establish that there existed, **at least**, fifty specific photographs containing prohibited images. *See Green*, *supra* at 485 (testimony that photographs depicted children's genitalia and pubic areas was sufficient to support conclusion that images were possessed for purposes of gratification) (citing *Davidson*, *supra* at 213 (concluding "an individual of ordinary intelligence . . . can identify whether a photograph of a nude child depicts 'nudity' for the purpose of sexual stimulation or gratification")).

discretion." ***Commonwealth v. Evans***, 201 A.3d 248, 250 (Pa. Super. 2018) (citations omitted).

Here, Norris's only timely challenge to the weight of the evidence, contained in his post-sentence motion, alleged that the verdict was "against the weight of the evidence, in that the jury found [Norris] guilty [] without being able to properly view the photographs involved." ***See*** Appellant's Post-Sentence Motion, 10/4/19, at ¶ 3(b); ***see also supra*** at n.10, n.12.

The appellate standard of review for a weight of the evidence claim is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>
>> The term "discretion" imports the exercise of judgment, wisdom[,] and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the

> judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (original emphasis, internal citations, and quotation marks omitted).

Here, we have already found that Norris's claim is belied by the record. ***See supra*** at n.19. Consequently, we conclude that, although it is unclear from the record whether the jury was able to view **all** of the one-thousand-five-hundred-and-thirty photographs discovered on Norris's computer and flash drives when determining which specific fifty photographs constituted child pornography, the trial court did not abuse its discretion in determining that the jury's verdict that **Norris possessed at least fifty prohibited images** was not against the weight of the evidence and that a new trial should not be granted. ***See Clay***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/07/2021