J-A30017-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
MARK DAVID BREAKIRON, :
:
Appellant. : No. 1474 WDA 2017

Appeal from the Judgment of Sentence, February 14, 2017,
in the Court of Common Pleas of Fayette County,
Criminal Division at No(s): CP-26-CR-0000331-1987.

BEFORE: SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.: FILED MARCH 22, 2019

Mark David Breakiron appeals from two judgments of sentence[1] after a jury convicted him of murder of the first degree[2] and robbery.[3] The trial judge sentenced Breakiron to life in prison for the 1987 homicide of Saundra Marie Martin, followed by five to ten years' incarceration for robbing her. For the reasons below, we affirm.

_____

[1] On October 10, 2017, Breakiron filed a single notice of appeal from the two, separate judgments of sentence, which the trial judge entered at two, separate docket numbers. In Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018), the Supreme Court of Pennsylvania held that a single notice of appeal does not suffice for appeals from multiple dockets. However, the Walker Court applied its decision only prospectively. This appeal predates Walker by several months; thus, Walker is inapplicable.

[2] 18 Pa.C.S.A. § 2501.

[3] 18 Pa.C.S.A. § 3701.

_____

* Retired Senior Judge assigned to the Superior Court.

Factual and Procedural Background

In April of 1987, the then-district attorney of Fayette County originally charged Breakiron with murder of the first degree and robbery. A year later, a jury convicted him on both charges. The trial court sentenced Breakiron to death.

After decades of appeals in both the state and federal courts, Breakiron won habeas corpus relief from the United States Court of Appeals for the Third Circuit. That court ordered a retrial. Breakiron's reconviction in 2017 is the subject of this direct appeal.

The Third Circuit recounted the facts and procedural background of this case as follows:

> On March 24, 1987, Breakiron killed Saundra Marie Martin, the bartender of a bar called "Shenanigan's" in Uniontown, Pennsylvania, at which he was the night's last patron. He also stole her purse and bags of money from the bar. The Commonwealth charged him with murder and robbery and tried him before a Fayette County jury in April 1988 . . .
>
> At trial, Breakiron never denied killing Martin or committing theft by stealing the money. Instead, he put on a voluntary intoxication/diminished capacity defense and argued that he was guilty of third-degree murder, because he did not have the specific intent to kill. He also argued that he was guilty of theft, but not robbery, because he decided to steal after his attack on Martin was complete. See 18 Pa.C.S.A. § 3701(a)(1) (defining robbery as, inter alia, infliction of injury or use of force "in the course of committing a theft").
>
> The only evidence potentially relevant to that issue was the testimony of the Commonwealth's witness Ellis Price, who was incarcerated with Breakiron before Breakiron's

- 2 -

trial, and Breakiron's own testimony. Price testified that, while imprisoned with Breakiron, he and Breakiron had "conversations regarding the offenses with which [Breakiron] has been charged," and that Breakiron made "statements … regarding whether or not he participated in these crimes." Price testified that Breakiron "told me that when he was at the bar, that there was another guy and girl there. So, he went into the bathroom to hide until they left." According to Price, Breakiron told him that he then returned to the bar area and asked for another drink. Martin, however, told him that it was closing time and asked him to leave, "so he picked up the ashtray and started hitting her." Price further testified that Breakiron said "[h]e hit her a few times. She wouldn't go to the floor. So, he just—he pulled out the knife and I don't know what he did after that. Then, he drug her out to his truck and took her to … his pap's house" and "finished her off there."

Breakiron, by contrast, testified that Martin started the altercation by hitting him over the head with "something heavy" after he put his arm around her. He further testified that he "blacked out," awoke to find Martin with a knife sticking out of her back, left the bar and drove away. He then returned to the bar, put Martin's body in his truck, went back into the bar, "and then when I started to leave, I saw two money bags laying on the floor to the entrance by the dance floor" and "put them in the back of the truck." At closing, Breakiron's counsel argued that he was not guilty of robbery because he decided to steal the money after killing Martin. Breakiron's counsel, however, did not request a charge on the lesser-included offense of theft, and the trial court did not give one.

The jury found Breakiron guilty of first-degree murder and robbery. At the penalty phase, the jury recommended a death sentence after finding as an aggravating factor that he murdered Martin "while in the perpetration of a felony" — i.e., the robbery. 42 Pa.C.S.A. § 9711(d)(6). (It found as an additional aggravating factor that he committed the murder "by means of torture.") The trial court sentenced Breakiron to death on the murder conviction plus five to ten years of imprisonment on the robbery conviction. The Pennsylvania Supreme Court affirmed. See Commonwealth v. Breakiron, 524 Pa. 282, 571 A.2d 1035 (1990). Breakiron filed a petition under

- 3 -

Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546 (the "PCRA") in 1996, and the PCRA court denied it after holding an evidentiary hearing. The Pennsylvania Supreme Court affirmed that ruling as well. See Commonwealth v. Breakiron, 556 Pa. 519, 729 A.2d 1088 (1999) ("Breakiron–2").

Breakiron then instituted the federal habeas proceeding at issue here in 2000. Shortly thereafter, he filed a second PCRA petition in state court. The PCRA court dismissed it as untimely and the Pennsylvania Supreme Court affirmed. See Commonwealth v. Breakiron, 566 Pa. 323, 781 A.2d 94 (2001) ("Breakiron–3"). The parties then litigated the federal habeas petition before three different District Judges for almost seven years, during which Breakiron amended his petition several times, took discovery, and received an evidentiary hearing. Breakiron ultimately asserted eighteen claims, including claims addressed to the guilt and penalty phases of his trial and to his murder and robbery convictions. Among them were claims that the prosecution withheld evidence in violation of Brady that he could have used to impeach Ellis Price.

The District Court issued findings of fact on the Brady claims on September 19, 2007. It then issued its opinion and order on September 24, 2008, granting relief on three of those claims and invalidating the murder conviction. The District Court did not find Price's testimony relevant to the robbery charge, however, so it did not grant relief from the robbery conviction on that basis (or any other). The District Court granted Breakiron a certificate of appealability on one claim, but the parties agree that it is moot in light of the invalidation of his murder conviction and he has not pursued the claim on appeal. The Commonwealth moved for reconsideration, which the District Court denied. The Commonwealth has not appealed and asserts that it is prepared to retry Breakiron for murder. Breakiron appealed and filed a motion to expand the certificate of appealability to raise the claims at issue here, which we granted.

Breakiron v. Horn, 642 F.3d 126, 129–31 (3d Cir. 2011). The Third Circuit

ultimately extended habeas relief to Breakiron's robbery conviction, as well,

because the Commonwealth's Brady[4] violation implicated that charge, too. See id. at 129.

On remand from the federal courts, Breakiron filed a pre-trial motion on double-jeopardy grounds to prohibit a retrial. The trial court denied that and other motions.

The case proceeded to a new jury trial. During all phases of Breakiron's second trial, the two sides made no attempt to conceal his 1988 trial and conviction from the jury. Indeed, they agreed to have the judge inform the jurors about the case's long history during both voir dire and the initial jury instructions. In fact, much of the Commonwealth's case was based upon Breakiron's testimony from the 1988 trial, and many of his prior admissions were read to the 2017 jury.

For his part, Breakiron essentially retried his defensive strategy from the 1988 trial. He admitted that he had killed Ms. Martin, but argued that, due to over-intoxication, he lacked the requisite mental capacity to form the intent to commit a murder of the first degree. Instead, he told the jury they should convict him of murder of the third degree. He also testified that, after slaying Ms. Martin, he left the bar, drove towards Uniontown, returned to the scene of the crime, and only then stole the money. Thus, he argued that he was not guilty of robbery, but only guilty of theft, because Ms. Martin was dead by the time he stole her purse and the bar's money.

_____

[4] See Brady v. Maryland, 373 U.S. 83 (1963).

The 2017 jury returned the same verdict as the 1988 jury – guilty as charged.

The trial court sentenced Breakiron as previously mentioned above, and the defendant filed post-trial motions. Four months later, those motions were deemed denied by operation of law. The Clerk of Courts of Fayette County waited nearly two months to memorialize that denial in a form order.

A month later, this untimely appeal followed due to the Clerk's delay.[5]

## Analysis

Breakiron raises six issues on appeal. They are as follows:

1. Did Breakiron's second trial violate the Double Jeopardy Clause of the Pennsylvania Constitution?

2. Did the trial court err when it informed the potential jurors during voir dire and again informed the jury during the preliminary jury instructions that the

---

[5] The negligence of the Clerk of Courts of Fayette County excuses Breakiron's tardiness. Breakiron filed his post-sentence motions on February 23, 2017, which became denied by operation of law 120 days later – i.e., on July 13, 2017. See Pennsylvania Rule of Criminal Procedure 720(B)(3)(a). At that moment, his appellate rights ripened and his clock for filing this appeal began to run. See Pa.R.Crim.P. 720(A)(2)(b).

However, the Clerk of Courts neglected entering an order of denial until September 11, 2017, nearly a month after his deadline to appeal passed. Thus, we conclude that the Clerk unreasonably delayed in filing that ministerial order. Breakiron then filed his notice of appeal within 30 days of receiving that order. Thus, we will not quash his untimely notice of appeal. See Commonwealth v. Braykovich, 664 A.2d 133, 138 (Pa. Super. 1995) (concluding that delay by a clerk of courts constitutes a "breakdown in the court system" and therefore excuses appellants' untimely notices of appeal).

Commonwealth had previously tried and convicted Breakiron for the same crimes and that he had been incarcerated during the 30 years since his 1988 trial?

3.      Was it ineffective assistance of counsel to fail to object to these instructions from the trial judge?

4.      Did the Commonwealth present sufficient evidence to convict Breakiron of murder of the first degree?

5.      Did the Commonwealth present sufficient evidence to convict Breakiron of robbery?

6.      Did the cumulative effect of these preceding errors warrant a new trial?

See Breakiron's Brief at 4.

We will address each issue in turn.  However, we will discuss the claims of insufficient evidence simultaneously for ease of disposition.


### The Double Jeopardy Issue

First, Breakiron asserts that his 2017 retrial violated his right under the Constitution of the Commonwealth of Pennsylvania to be free from standing twice in jeopardy for the charges he faced in 1988.  He argues that, due to the Brady violations by prosecutors in his 1988 trial, the trial court erred by permitting the Commonwealth to retry him in 2017.

Because this issue presents us with a question of constitutional law, "our scope of review is plenary, and we review the lower courts' legal determinations de novo."  Commonwealth v. Muniz, 164 A.3d 1189, 1195 (Pa. 2017).

The Constitution of the Commonwealth of Pennsylvania provides, "No person shall, for the same offense, be twice put in jeopardy of life or limb . . . ." Pa. Const. Art. I § 10. In construing this clause, the Supreme Court of Pennsylvania has held that it:

> prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

Commonwealth v. Smith, 615 A.2d 321, 325 (Pa. 1992). Breakiron asserts the second Smith prong for his double-jeopardy claim.

As the trial court explained, "the prosecutors disclosed everything they understood they should disclose." Trial Court Statement in Lieu of 1925(a) Opinion, 1/19/18, at 3. In other words, the trial court made a finding of fact that the Brady violation was not "intentionally undertaken to prejudice the defendant." Smith, supra. Nothing in Breakiron's brief attacks that factual finding. As such, it is binding upon this Court.

Thus, because Breakiron has not proven in the trial court that the 1988 Brady violation was intentional, rather than merely an honest mistake or oversight, double jeopardy does not attach to his 2017 retrial under Smith. We therefore dismiss Breakiron's first issue as affording him no relief.

### Trial Judge's References to the 1988 Trial and Conviction

For his second claim of error, Breakiron claims that the trial judge erred when he told the jurors during voir dire and preliminary-trial instructions about Breakiron's 1988 trial and conviction.

Breakiron, however, made no objection to the judge's statements during voir dire or at trial; he first raised this issue in his 1925(b) Statement. Indeed, as the trial judge pointed out, he discussed this issue "at great length with trial counsel, and trial counsel represented to the court that the issue was discussed with the defendant as well." Trial Court Statement in Lieu of 1925(a) Opinion, 1/19/18, at 1.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pennsylvania Rule of Appellate Procedure 302. Because Breakiron interposed no objections to these instructions when the trial judge gave them to the jurors, we dismiss his second appellate issue due to Breakiron's waiver of it.

### Trial Counsel's Failure to Object to Trial Judge's Instructions

For his third issue, Breakiron argues that his trial counsel was ineffective for not objecting when the trial judge informed the jurors of the 1988 trial and conviction. "Such claims must now be deferred to PCRA review, whereupon there will be an opportunity for greater development than that which occurred in the post-trial proceeding before the trial court here." Commonwealth v. Stollar, 84 A.3d 635, 652 (Pa. 2014).

We therefore dismiss this issue as premature. Breakiron may renew his ineffectiveness claim in a properly filed PCRA petition.[6]

## The Sufficiency of the Evidence Issues

Breakiron's next two claims of error are that the Commonwealth produced insufficient evidence to sustain its burden of proof as to either of the crimes for which the jury convicted him. For both murder of the first degree and robbery, Breakiron believes that he established, "through largely unrebutted testimony" (Breakiron's Brief at 25, 28), that (1) he was too drunk on the night he killed Ms. Martin to form the requisite, criminal intent for murder of the first degree and (2) he did not steal the money bag or her purse until after she was dead. Thus, he argues that his testimony has conclusively disproved elements of both crimes.

Had the jury believed his testimony, this would be true. However, it did not, and our scope and standard of review for reviewing a sufficiency claim is:

> whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The

---

[6] See 42 Pa.C.S.A. §§ 9541 – 9546.

> Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

Commonwealth v. Colon—Plaza, 136 A.3d 521, 525–526 (Pa. Super. 2016).

Both of Breakiron's theories of error fail, because this Court does not review a jury's credibility determinations. An appellate court, unlike a jury, is incompetent to make credibility determinations, because we did not see or hear anyone testify. As such, the jury was the court of last resort on all questions of fact. Thus, because the jurors rejected Breakiron's rendition of events as incredible, we are bound by that rejection, and this Court has no lawful authority to supplant its judgment for theirs.

To grant relief on either of Breakiron's insufficiency claims, we would have to substitute the jury's disbelief of his testimony with our acceptance of it. This we may not do. Thus, even though Breakiron gave "largely unrebutted testimony" (Breakiron's Brief at 25, 28), there are no grounds to conclude that his unrebutted testimony was also truthful.

Based upon their guilty verdicts on both crimes, the jurors found his account of the murder and theft to be untrue. As the Commonwealth put it, "Breakiron's conclusory contention that the jury was obliged to credit his version of events and/or expert witness . . . is completely meritless." Commonwealth's Brief at 28.

Indeed, the Commonwealth offered the expert testimony of Dr. Bruce Wright to counter Breakiron's diminished-mental-capacity defense. The jury credited Dr. Wright over Breakiron's testimony and his defense expert.

Moreover, as the Commonwealth correctly reasoned:

> There was no reason that the jury was required to give credence to Breakiron's . . . convoluted timeline of events and professed thought-process, instead of finding that he initially assaulted and/or eventually killed [Ms.] Martin with the intent to abscond with the missing items, took the items and her body from the bar at the one time and had, in fact, not returned to the bar after he initially left . . . It would be quite plausible for a fact finder to conclude that Breakiron's description of events was specially concocted to attempt to defeat the robbery [charge] at his original trial.

Id. at 28-19. We agree.

The jury was "free to believe all, part, or none" of the various witnesses' testimony. Colon-Plaza, supra. It believed the Commonwealth's witnesses instead of Breakiron's. This renders the premise of Breakiron's insufficiency claims – that his version of events was conclusive – false.

Thus, we dismiss both claims as meritless.


<u>Breakiron's Request for a New Trial</u>

Finally, Breakiron suggests that the preceding errors, cumulatively speaking, require a new trial. However, given that no such errors occurred, we deny his request.


Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/22/2019