J-A01019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TERRENCE R. YOAST | |
| Appellant | No. 3877 EDA 2017 |

Appeal from the Judgment of Sentence imposed September 27, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0002236-2017; CP-46-CR-0002233-2017; CP-46-CR-0002231-2017

BEFORE:  OTT, STABILE, AND MCLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:               **FILED SEPTEMBER 19, 2019**

Appellant, Terrence R. Yoast, appeals *pro se* from the judgment of sentence the Court of Common Pleas of Montgomery County imposed on September 27, 2017.   On appeal, Appellant argues the evidence was insufficient to support his convictions.  We disagree.  Accordingly, we affirm the judgment of sentence.

The trial court, sitting as the fact-finder, summarized the facts and procedural history as follows:

> Officer Fischer testified that on December 15, 2016 he received a harassment call for 402 Beech Street in Pottstown, Montgomery County.  Ms. Aphrodite Hussain had called police for harassment, advised police of the interactions she had with [Appellant], and showed police text messages between herself and [Appellant].  Officer Fischer then called [Appellant] to find out his side of the story.  He advised [Appellant] that Ms. Hussain was offended, and that it would be best if [Appellant] communicated through Ms. Hussain's attorney rather than direct contact for any civil issues

they had pending. Officer Fischer advised [Appellant] that he should stop contacting Ms. Hussain, but [Appellant] said this was not a police issue and he would not stop contacting her as she was his tenant. Officer Fischer advised [Appellant] to resolve their civil issues with the district justice and that the harassment was a police issue [that] needed to cease. An hour later, police were contacted again, and Ms. Hussain advised that [Appellant] had continued with his harassing text messages. Police issued a citation[,] which was mailed to [Appellant], but later withdrawn due to other pending cases.

From December 11-15, 2016, there were over 40 pages of text messages between [Appellant] and Ms. Hussain. Some of the text messages sent by [Appellant] said "Feel free to supplement your body with additional layers of clothing and realize you are not in the Bermuda Triangle where you can walk around in a bikini and still feel warm." [Appellant] also, in response to Ms. Hussain's text that her daughter had wet the bed and she needed access to a washer to wash the sheets urgently, texted "You peed the bed?" and after being told that was not the case[,] [Appellant] replied "you propped (sic?) it and then blamed it on [your daughter]. That is so weak."

Officer Schmalbach was called to 402 Beech Street on December 23, 2016 by Ms. Hussain complaining of harassing text messages from [Appellant]. Officer Schmalbach contacted Officer Fischer to determine that this was not an isolated incident, but an ongoing course of conduct. After speaking to Officer Fischer, Officer Schmalbach issued a summons for harassment. Some of the text messages at issue included [Appellant] telling Ms. Hussain that "You don't want to scald [your daughter] with hot water anyway. I think you are being very improvident as a mother."

Then on February 26, 2017, Corporal O'Neill arrived for another complaint at 402 Beech Street. Ms. Hussain told police that [Appellant] had been at the property for an excessive amount of time and she did not feel comfortable with him being on the property. Ms. Hussain was upset and said [Appellant] had called her a "bitch" and other words. [Appellant] claimed to be installing a washer, so police told him to leave after installing it and believed that the situation was resolved.

However, police received another harassment complaint, and Officer Portock was called to the 402 Beech Street property on

March 2, 2017. Police were notified by multiple callers that a person was kicking a vehicle and taking photographs. He encountered [Appellant] in his car driving away from the address, and [Appellant] said he had been taking photographs. Ms. Hallinger lived across the street from Ms. Hussain and on March 2, 2017 heard yelling outside. She looked out the window and saw [Appellant] walking down the street with the phone in his hand, and then return and kick Ms. Hussain's car. Ms. Hussain went onto her porch and there were words exchanged between [Appellant] and Ms. Hussain or yelling in general.

Finally, Ms. Hussain testified about [Appellant] threatening her and how [Appellant] told her the prior tenant had lost his Section 8 housing and that if Ms. Hussain kept "F'ing with him, [she would] be next. He seen plenty of losers like me get kicked off the program for running their mouth." Ms. Hussain testified that on December 15, 2016 she returned home and things were not in their place at her home, and she felt [Appellant] had been in her property without her consent. On December 23, 2016, she called police again, after the text messages regarding the Bermuda triangle, her daughter wetting the bed, and being an improvident mother. Ms. Hussain also testified that on February 26, 2016, [Appellant] came to the apartment without notice around 2 or 3 P.M. and then Ms. Hussain called police around 7:30 P.M. She testified that [Appellant] wandered around the yard for 5 hours with a rake for a very small area of land. Ms. Hussain asked when [Appellant] was going to leave the property and [Appellant] said "F you. He would say the B word. You are a low life. Go back to your F'ing country. Shut the F up." Ms. Hussain was afraid because [Appellant] had a key to her apartment as the landlord and "he has mentioned that people from the neighborhood are going to – may possibly be threatening me some time soon." Finally, on March 2, 2017, the police were called by Ms. Hussain who saw [Appellant] recording himself and he was kicking and yelling, going through trash cans, and kicking the trash cans and Ms. Hussain's car.

[Appellant] testified in his own defense. Unsurprisingly, his testimony was contradictory to the Commonwealth's evidence. [Appellant] denies that he kicked the car or had a verbal confrontation with Ms. Hussain on March 2, 2017. Following the [b]ench trial, [the trial c]ourt found [A]ppellant Not Guilty on Docket 2236-2017, guilty of summary harassment on Docket 2233-2017, and guilty of summary harassment on Docket 2231-

2017. [The trial c]ourt sentenced [Appellant] to time served to 60 days on each docket running concurrent. [Appellant] filed a *pro se* post-sentence motion while still represented by counsel. [The trial c]ourt conducted a ***Grazier*** hearing, and on the request of [Appellant], allowed him to proceed *pro se*.[1] [Appellant] then filed a timely post-sentence motion[,] which [the trial c]ourt denied. Subsequently, [Appellant] filed a timely Notice of Appeal.

Trial Court Opinion, 1/17/18, at 1-4 (citations to the record omitted).

Appellant challenges the sufficiency of the evidence supporting his two convictions of summary harassment under Section 2709(a)(3) of the Crimes Code, which reads: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]" 18 Pa.C.S.A. § 2709(a)(3).

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to

_____

[1] In an order entered December 1, 2017, the trial court noted that "[f]ollowing a ***Grazier*** hearing on October 23, 2017, [Appellant] was found to have knowingly, voluntarily, and intelligently waived his right to counsel on appeal." Trial Court Order to Clarify the Record, 12/1/17, at 1.

determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not reweigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

Appellant's brief spans more than 70 pages, rambling essentially about every single piece of evidence the Commonwealth put on the record against him. The statement of questions involved on appeal, which includes seven issues for our review, spans more than six pages. The only way to make sense of so much verbosity is to rely on Appellant's own summary of the argument.[2] Appellant's main argument is that the evidence is legally insufficient to support his convictions because electronic communications (texts) do not constitute an "act" as defined in Section 103 of the Crimes Code,[3] or otherwise qualify

---

[2] Indeed, as also recognized by Appellant, "this complexity of nonsense consisting of 247-page Bench Trial Transcript and 475-page Reproduced Record, can be reduced to a fundamentally simple summary of argument," Appellant's Brief at 29, *i.e.*, electronic communications (texts) do not qualify as an act under Section 103 of Crimes Code.

[3] "'Act'. A bodily movement whether voluntary or involuntary." 18 Pa.C.S.A. § 103.

as "course of conduct."[4]  However, as explained below, the sufficiency of the evidence issue, as articulated on appeal, was not raised below.  It was raised for the first time on appeal.  Accordingly, we must conclude that the issue is waived.

Appellant raised eleven issues before the trial court.  *See* Trial Court Opinion, 1/17/18, at 5-7.  In his Rule 1925(b) statement, Appellant challenged the trial court's findings as to the relevancy or the characterization of the "improvident" statement (first five issues), the "horrible mother" statement (sixth issue), and the kicking of victim's car bumper (last five issues).  Yet, there is no mention anywhere of the issue Appellant raises in his brief to this Court–-as noted, before this Court Appellant is arguing that electronic communications do not constitute an "act" or otherwise qualify as "course of conduct."   Thus, we conclude that the issue raised in his appellate brief is

_____

[4] Section 2709(f) defines "course of conduct" as follows:

> "Course of conduct." A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously. Acts indicating a course of conduct which occur in more than one jurisdiction may be used by any other jurisdiction in which an act occurred as evidence of a continuing pattern of conduct or a course of conduct.

18 Pa.C.S.A. § 2709(f).

raised for the first time on appeal.  As such, Appellant waived it.  ***See*** Pa.R.A.P. 302(a).[5]

In addition to the main sufficiency of the evidence issue described above, Appellant raised other issues, which we discuss below.

Appellant argued that "Appellant's verbal in-person utterance of de minim[i]s profanity . . . on February 26, 2017 that she was a 'bitch', was responsive to perceived harassment and outside the scope of 'lewd, lascivious, threatening or obscene words."  Additionally, Appellant argued that the "solitary" act of kicking the victim's car does not qualify as a "course of conduct" or a repeated act.  Appellant's Brief at 30-31.

These two issues were adequately addressed in the trial court opinion, which we adopt as ours.  Trial Court Opinion, 1/17/18, at 8-13.  In essence,

---

[5] Even if not waived for failure to raise it in his Rule 1925(b) statement, Appellant would not be entitled to relief.  Appellant emphasizes that electronic communications are not an "act" for purposes of Section 2709(a)(3) because they do not involve a bodily movement.  Appellant focuses on the method of delivery of the harassing message as opposed to the underlying acts or course of conduct giving rise to the instant conviction.  The relevant acts or course of conduct here is the repeated texting, *i.e.*, typing messages, to victim for no legitimate purposes.  Additionally, as noted, Appellant's relevant conduct for purposes of establishing a violation of Section 2709(a)(3) was not limited to the texting, but included in-person offensive language and physical actions (yelling, digging through garbage, and kicking victims' car).

Additionally, Appellant argues that Section 2709(a)(3) is different from similar subsections of the same harassment statute, *i.e.*, Sections 2709(a)(4)-(a)(7), which specifically include electronic communications.  Even if true, Appellant provided no authority, nor could we find any, to support Appellant's allegation that the elements of the crime under Section 2709(a)(3) cannot be met by texting.

[w]hen evaluating the totality of the evidence regarding [Appellant]'s interactions with Ms. Hussain, there are numerous conversations where [Appellant] is making statements that have no relation to the landlord/tenant relationship. [Appellant]'s comments about Ms. Hussain not living in the Bermuda [T]riangle, being the person who wet the bed rather than her daughter and being "weak" for "blaming" the situation on her daughter, in addition to the comment about not wanting to scald her daughter and being an improvident mother combined to create prior incidents which served no legitimate purpose and were intended to harass Ms. Hussain, or at least annoy her. Ms. Hussain told [Appellant] she found those comments offensive, and [Appellant] was on notice that making those kind of comments was at least annoying to Ms. Hussain. [Appellant] threatened Ms. Hussain by saying that if she kept "F'ing with him, [she would] be next. He seen plenty losers like me get kicked off the program for running their mouth." [Appellant] would also say "F you. He would say the B word. You are a low life. Go back to your F'ing country. Shut the F up." [Appellant]'s intent after that could be only to annoy, alarm, or harass Ms. Hussain. This course of conduct continued until it culminated on February 26, 2017 with [Appellant] calling Ms. Hussain a "bitch." None of these comments or insults served a legitimate purpose. [Appellant] was more than capable of having civil, professional, landlord/tenant conversations as evidenced by other text messages. His repeated comments and insults served no legitimate purpose and were intended to harass and annoy Ms. Hussain.

Trial Court Opinion, 1/17/18, at 8-9 (citations to record omitted).

Specifically, with regard to the use of the "B" word on February 26, 2017, the trial court found that "[w]hile [Appellant] may believe his communication was responsive, [the trial court] found that it was not responsive to anything, and that [Appellant] engaged in activity without legitimate purpose with the intent to harass, annoy, or alarm Ms. Hussain." *Id.* at 12.

With regard to the kicking of victim's vehicle, which Appellant characterizes as an isolated event, the trial court noted:

> [Appellant]'s actions on March 2, 2017, where he went through the garbage, was yelling outside the apartment, and was filming the property culminating in [Appellant] going to Ms. Hussain's car and kicking the bumper did not serve a legitimate purpose and consisted of more than one act. Thus, [Appellant]'s actions on March 2, 2017 formed a course of conduct on their own and this was not an isolated incident.

*Id.* at 11-12.

Having concluded that Appellant is not entitled to relief on his sufficiency of the evidence claim, we now address Appellant's claim, raised in the alternative, that we should remand to the trial court to conduct a hearing on his after-discovered evidence claim.

After the trial, Appellant conducted his own investigation by approaching a neighbor of the victim. Appellant's Brief at 66. According to Appellant, the neighbor, who "refused"[6] to testify at Appellant's trial, *id.* at 69, told Appellant that the victim and the neighbor's girlfriend lied under oath at his trial regarding the March 2, 2017 incident. *Id.* at 66-71.

> To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely.

---

[6] According to Appellant, the witness, Leon Smith, "refused to testify [at Appellant's trial] because he had an outstanding bench warrant for failure to pay child support." Appellant's Brief at 69.

*Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa. Super. 2007) (citation omitted).

Appellant would not be able to meet one or more of the prongs of this test. First, the after-discovered evidence would be corroborative or cumulative of the evidence and argument Appellant made at time of the trial, N.T. Trial, 9/4/17, at 222-24 (*i.e.*, victim lied about the events she testified at trial) and on appeal (*i.e.*, victim "fabricated" the evidence against him, Appellant's Brief at 57).[7]   Additionally, the alleged after-discovered evidence of witnesses lying at trial, assuming admissibility, would be relevant only for purposes of impeaching the witnesses.[8]   Accordingly, Appellant is entitled to no relief on his request for a remand.

For the reasons stated above, we conclude Appellant waived his claim before this Court because he failed to raise it below, and, to the extent any other issues are properly before this Court, we conclude that the trial court

---

[7] Additionally, among other examples of corroborative or cumulative evidence and arguments, Appellant described victim's testimony as follows: "The alleged victim's version of turbulent events is not only topsy turvy and deranged, it's self-defeating without deducible intent." Appellant's Brief at 57.

[8] Furthermore, it would appear that the "after-discovered" evidence was available at time of trial. Based on Appellant's own statements, it would appear that the identity of the witness, Mr. Smith, was known at time of the trial, yet Appellant did nothing about it. Now that Mr. Smith's problems have been "rectified", Mr. Smith "would be available and willing to testify as a fact-witness without the burdensome fear of entering the Courthouse with an outstanding bench warrant for child support." Appellant's Brief at 70.

properly addressed said issues. Accordingly, we affirm the trial court's September 27, 2017 judgment of sentence. We further direct that a copy of the trial court's January 17, 2018 opinion be attached to any future filings in this case.[9]

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/19/19

---

[9] Appellant's application to exceed word limitations, filed June 20, 2019, application for remand, filed June 29, 2019, and application for oral argument, filed July 1, 2019, are denied as moot.