J-S13002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTIAN WOODSON | |
| Appellant | No. 1382 MDA 2019 |

Appeal from the PCRA Order Entered July 18, 2019
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0005302-2016

BEFORE:  STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 16, 2020**

Appellant, Christian Woodson, appeals from an order denying relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541—46.  Appellant argues that the evidence was insufficient to sustain his conviction for possession with intent to deliver a controlled substance ("PWID"), 35 Pa.C.S.A. § 780-113(a)(30).  We affirm.

The following evidence was adduced during Appellant's trial:

Officer Jared Snader ("Snader") [of the] LCBP [Lancaster County Police] testified that on February 26, 2016, he was working undercover driving in the area of Queen and Conestoga Streets in Lancaster City targeting street-level drug sales.  At the time of the investigation, this was "the single worst drug area in Lancaster City, especially for heroin."  Snader told the jury that he had been an officer for ten years, he was assigned to a special unit designed to investigate drug-related issues, he received special training for drug investigations, and he had been involved in over one

---

[*] Retired Senior Judge assigned to the Superior Court.

thousand drug investigations. According to Snader, most transactions involve a middleman who hangs out in high drug areas, accepts money from the buyer, and then meets up with a supplier who provides the drugs. This process isolates the supplier from dealing directly with people they do not know, while the middleman gets to keep some of the money or drugs. Without going through a middleman, it would be very difficult to purchase drugs.

Regarding this specific transaction, Snader testified that he and Officer Adam Flurry. ("Flurry"), LCBP, were driving together in a vehicle when Flurry made contact with an individual later identified as Santiago-Rivera, at which time Flurry had a conversation with Santiago-Rivera about purchasing heroin. Santiago-Rivera got into the undercover vehicle and told Snader where to drive, while Flurry gave Santiago-Rivera $40 of previously marked United States currency. Santiago-Rivera asked to borrow Flurry's phone, and Snader testified that he heard buttons being pressed which sounded as if Santiago-Rivera was sending text messages.

Santiago-Rivera directed Snader to pull over in front of Save-A-Lot, where Santiago-Rivera began placing phone calls. Snader testified "[i]t was obvious to me at that point that he was a middleman. He didn't have [the heroin] on him. He was contacting somebody to come and bring the heroin for us." Santiago-Rivera called his contact several times, giving his location over the phone. Santiago-Rivera then directed Snader to drive to the Andromeda Grocery, where Santiago-Rivera said he was going to get change. Flurry had given Santiago-Rivera two $20 bills, and Snader believed Santiago-Rivera wanted change so he could keep $10 for himself. When Santiago-Rivera exited the store, he placed several more phone calls with his contact. During the phone calls, Santiago-Rivera informed his contact that he was waiting in a van and described the vehicle.

Snader then observed an individual, later identified as [Appellant], walk towards their location and stop to meet with Santiago-Rivera. Santiago-Rivera and [Appellant] talked for about 30 seconds, standing approximately one foot apart. Santiago-Rivera then reached his left arm towards [Appellant], [Appellant] extended his arm, and it appeared as if they were exchanging something. When Santiago-Rivera broke contact with [Appellant], Snader could see that [Appellant] had money in his hands that he was

- 2 -

counting as he walked away. It was light out, and from his training and experience Snader testified this was "absolutely a hand-to-hand drug transaction." Santiago-Rivera got back into the undercover vehicle, at which time Flurry stated the deal was complete and Santiago-Rivera was dropped off at another location. [Appellant] was then stopped by another officer under a ruse so they could verify his identity. After testifying about the transaction, Snader identified [Appellant] in the courtroom as the individual who conducted the hand-to-hand transaction with Santiago-Rivera. In addition to Snader, Officer Flurry testified about his assignment to the Selective Enforcement Unit, the extensive training he has received in drug investigations, and his involvement in over one thousand such investigations[, including the role of a middleman in those transactions] . ....

Regarding this specific incident, Flurry testified that while he and Snader were driving in a high drug activity area of the city, Flurry saw a person later identified as Santiago-Rivera walking in the street. Flurry had a conversation with Santiago-Rivera about purchasing heroin, and Santiago-Rivera stated he could assist Flurry. Santiago-Rivera got into the vehicle, at which time Flurry gave him $40 of United States currency. Santiago-Rivera asked for Flurry's cell-phone, Flurry gave it to him, and Flurry then heard Santiago-Rivera send text messages. Later, upon reviewing the text messages, Flurry saw they were written in Spanish to a person who was not available. At some point, Santiago-Rivera made a telephone call and cryptically spoke to the other person in broken English, asking where the person was. Santiago-Rivera then made a series of additional calls, and it was later determined by Flurry while inspecting the phone that they were all made to the same phone number. That number could not be traced. Thereafter, Santiago-Rivera met with an individual on the sidewalk, but Flurry could not see what occurred because they were out of his field of vision.

When Santiago-Rivera returned to the car, he handed Flurry the heroin. Flurry later gave the packets of suspected heroin to Officer Jason Hagy ("Hagy"). Officer Hagy, LCBP, also a member of the Selective Enforcement Unit, detailed his training and experience in drug investigations. On February 26, 2016, Hagy was the primary surveillance officer in charge of this investigation, traveling in a separate vehicle. During the surveillance, Hagy witnessed Santiago-Rivera meet up with another individual that Santiago-Rivera obviously knew. Hagy saw Santiago-Rivera

- 3 -

retrieve something with his left hand and stick it in his left jacket pocket, while the other person was manipulating what appeared to be paper currency. This interaction was indicative of a drug transaction. Hagy identified [Appellant] in court as the person who came into contact with Santiago-Rivera.

Trial Court Opinion, 11/21/2017, at 5-9 (record citations and footnotes omitted). The Commonwealth introduced video footage showing the hand-to-hand exchange between Santiago-Rivera and Appellant. Another police officer apprehended Appellant as he walked away from the transaction with Santiago-Rivera. The packets that Santiago-Rivera received from Appellant and handed to Flurry tested positive for heroin.

Appellant was charged with delivery of heroin, criminal conspiracy to deliver heroin to an undercover officer, and criminal use of a communication facility. On April 13, 2017, the jury found Appellant guilty of delivery of heroin and criminal conspiracy to deliver heroin, but not guilty of criminal use of a communication facility. On July 12, 2017, the court imposed consecutive sentences of 27-60 months' imprisonment on each count. On July 21, 2017, Appellant filed a motion for judgment of acquittal, motion for new trial, and motion to reconsider sentence. On July 28, 2017, Appellant filed a supplemental motion to modify sentence. On September 1, 2017, the court denied all post-sentence motions. Appellant timely appealed to the Superior Court, challenging the sufficiency of the evidence underlying his conspiracy conviction. On June 20, 2018, this Court affirmed his judgment of sentence.

***Commonwealth v. Woodson***, 2018 WL 3045876 (Pa. Super., June 20, 2018).

On February 28, 2019, Appellant filed a *pro se* PCRA petition raising multiple claims of ineffective assistance of counsel. The PCRA court appointed counsel, who filed a ***Turner***/***Finley***[1] no merit letter and a motion to withdraw. The no merit letter addressed the claims raised in Appellant's PCRA petition and five more claims raised by Appellant during their correspondence and conversations, including a contention that the evidence was insufficient to sustain his convictions. On June 4, 2019, the PCRA court filed a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. Appellant filed a lengthy *pro se* response in opposition to the Rule 907 notice. On July 18, 2019, the PCRA court dismissed Appellant's petition and granted PCRA counsel leave to withdraw.

On August 15, 2019, Appellant filed a timely notice of appeal to this Court. On August 20, 2019, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925 statement within twenty-one days. On September 6, 2019, Appellant submitted a Rule 1925(b) statement to prison authorities. On October 1, 2019, the PCRA court filed an opinion recommending quashal of this appeal due to untimely service of Appellant's Rule 1925(b) statement.

---

[1] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

We decline to quash this appeal because Appellant submitted the Rule 1925(b) statement to prison authorities on September 6, 2019, within twenty-one days of the PCRA court's order. Pa.R.A.P. 121(a) ("a *pro se* filing submitted by a prisoner incarcerated in a correctional facility is deemed filed as of the date it is delivered to the prison authorities for purposes of mailing or placed in the institutional mailbox").

We will not reprint the questions raised in Appellant's *pro se* brief due to their prolix and repetitive nature. The bulk of Appellant's brief is an argument that the evidence was insufficient to sustain his convictions for PWID and conspiracy. Appellant makes several procedural objections in the final pages of his brief. He has abandoned multiple other issues that he raised before the PCRA court.

Appellant's challenge to the sufficiency of the evidence of conspiracy fails because it was previously litigated. The PCRA provides that an issue is previously litigated where "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. § 9544(a)(2); **see also Commonwealth v. Stansbury**, 219 A.3d 157, 161 (Pa. 2019) (PCRA court properly dismissed petitioner's assertion that Commonwealth presented insufficient evidence at attempted murder trial to establish his identity as shooter, since this assertion was previously litigated on direct appeal). In this case, a panel of this Court—the highest court in which Appellant could have had review as a matter of right—

held in Appellant's direct appeal that the evidence was sufficient to sustain his conspiracy conviction. **Woodson**, 2018 WL at 3045876, **3-5. Therefore, no relief is due on this issue.

Appellant's challenge to the sufficiency of the evidence underlying his PWID conviction fails for two reasons. First, a claim of insufficient evidence is not cognizable under the PCRA. The PCRA only provides relief for the following types of claims:

> (1) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> (2) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> (3) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.
>
> (4) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
>
> (5) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.
>
> (6) The imposition of a sentence greater than the lawful maximum.
>
> (7) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S.A. § 9543(a)(2). Appellant's claim of insufficient evidence does not fit within any of these categories. It does not allege a constitutional violation, ineffective assistance of counsel, an unlawful guilty plea, obstruction by governmental officials of his right of appeal, newly discovered exculpatory evidence, an unlawful sentence, or the trial court's lack of jurisdiction.

Even if this claim were cognizable under the PCRA, it is devoid of merit. When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to accord to each witness's testimony and to believe all, part or none of the evidence. *Commonwealth v. Tejada*, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Crosley*, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994, 1001 (Pa. Super. 2015).

To sustain a conviction for PWID, the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. ***Commonwealth v. Roberts***, 133 A.3d 759, 767 (Pa. Super. 2016). The jury may infer intent to deliver from an examination of the facts and circumstances surrounding the case. ***Commonwealth v. Griffin***, 804 A.2d 1, 15 (Pa. Super. 2002). The evidence satisfies all elements of this offense. Viewed collectively and in the light most favorable to the Commonwealth, the testimony of Lancaster police officers and video footage of the incident demonstrate that Officer Flurry had a conversation with Santiago-Rivera about purchasing heroin and gave Santiago-Rivera money for cash for the purchase. Santiago-Rivera met with Appellant on the sidewalk and made a hand-to-hand exchange. Santiago-Rivera then handed packets of heroin to Officer Flurry. This evidence demonstrates that Appellant possessed the packets of heroin and intended them to be delivered to Officer Flurry.

Appellant complains at some length about perceived discrepancies in the evidence or evidence that he deems inadmissible. In so doing, he attempts to recast the evidence in the light most favorable to himself. Our mandate, however, is to view all evidence of record in the light most favorable to the Commonwealth. Under this standard, we readily conclude that there was sufficient evidence to support his PWID conviction.

At the end of his brief, Appellant raises a series of procedural objections, for example, a claim that there was no docket entry verifying the entry of appearance by any attorney on his behalf and no document verifying that he received copies of the criminal complaint or notice to appear for his preliminary hearing. Such claims are not cognizable under any category of the PCRA. *See* 42 Pa.C.S.A. § 9543(a)(2). Indeed, under the Rules of Criminal Procedure, the time for raising these objections lapsed long before trial. *See* Pa.R.Crim.P. 109 (defendant shall not be discharged due to defect in procedure unless (1) he raises objection before conclusion of preliminary hearing and (2) defect is prejudicial to his rights).

Lastly, Appellant objects that he did not consent to appointment of counsel on his behalf during PCRA proceedings. Once again, this claim is not cognizable under Section 9543(a)(2). Moreover, throughout PCRA proceedings below and in this Court, Appellant has had full and fair opportunity to file *pro se* petitions, responses and briefs expressing his position, and he has repeatedly exercised this right. The appointment of PCRA counsel caused him no prejudice.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2020