J-S04021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID MICHAEL BEECH | |
| Appellant | No. 1020 MDA 2020 |

Appeal from the Judgment of Sentence June 2, 2020
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0000002-2019

BEFORE:  OLSON, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                **FILED MARCH 8, 2021**

Appellant, David Michael Beech, appeals from his judgment of sentence of thirty to sixty months' imprisonment for strangulation, simple assault and harassment.[1]  Appellant challenges the sufficiency and weight of the evidence and contends that the trial court erred in admitting photographs taken by the victim of these crimes.  We affirm.

The record reflects that the female victim and Appellant had been in a relationship from 2015 to 2018.  For most of the relationship, the couple lived together in a house owned by the victim's parents.  During the last two years of the relationship, Appellant abused the victim verbally and physically, often because of Appellant's jealousy.  As a result, the victim could not maintain a job and relied on Appellant to provide for her financially.

---

[1] 18 Pa.C.S.A. §§ 2918, 2701, and 2709, respectively.

On November 5, 2018, Appellant and victim mutually ended their relationship. Although Appellant moved out of the home, he took the victim's car with him. On November 14, 2018, the victim went to the State Police in an attempt to retrieve the vehicle. Trooper Ryan Bivens spoke to the victim and became concerned by her timid demeanor and her need to involve the police in a vehicle dispute. The victim told Trooper Bivens she came to the police to avoid confrontation with Appellant, and she revealed various instances of abuse she had endured during her relationship with Appellant.

In particular, the victim told Trooper Bivens about the instance of abuse leading to Appellant's conviction for strangulation and other offenses. During the late evening on September 25, 2018, Appellant and victim began arguing over texts on the victim's cell phone. The argument began verbally but Appellant became physically abusive when the victim tried to walk away. The victim testified that when she turned her back towards Appellant, he approached her from behind, grabbed her by the neck and put a chokehold on her. The victim could not recall exactly how long Appellant strangled her but testified that Appellant held her for "what felt like a long time" until she could not breathe. N.T. 2/4/20, at 12. Only when the victim collapsed did Appellant finally release her from the chokehold. Lightheaded and flustered, the victim retreated to her bedroom in an attempt to find safety. Because of this incident, the victim's eyes were bloodshot for weeks, she had marks and

bruises around her neck, her throat was sore and raspy for months, and she had redness on the roof of her mouth.

Throughout the relationship, the victim took photos of the most severe injuries caused by Appellant in the hope of reporting the abuse one day. The day after the incident in question, the victim took photographs on her Android cell phone of the injuries caused by Appellant's abuse. Fearful Appellant may go through her cell phone and view the pictures, the victim printed the photos at Walmart and deleted them from her phone immediately afterward. At trial, the Commonwealth introduced ten photographs depicting her injuries sustained during the incident. The photographs showed the bruises on her neck, her bloodshot eyes, the redness on her throat and a laceration on her forehead.

Trooper Bivens testified that these photographs showed various injuries related to strangulation. He mentioned that the extreme bruising around the victim's neck and throat area clearly indicated strangulation. He also concluded that the victim suffered petechiae (stress of the blood vessels) in both eyes due to oxygen deprivation.

Although Appellant's charges relate solely to the September 25, 2018 incident, the victim reported three other instances of abuse to Trooper Bivens. About one year into their relationship, Appellant pushed the victim so hard she hit her head on the floor. On another occasion, Appellant suffocated the victim by putting blankets over her head. Finally, in early 2018, Appellant

injured the victim's arm to the point where she thought it may be broken. Similar to her documentation of the September 25, 2018 strangulation, the victim printed photographs of her arm so she could report the abuse one day. In addition to the physical altercations, Appellant broke two of the victim's cell phones in a jealous rage and caused damage to the house.

When questioned why she did not report her abuse to the police earlier, the victim stated "just out of fear of him still being there, what he would do to me or my house." *Id.* at 14. The victim elaborated that she feared Appellant would again abuse her, break things in her house, or even burn her house down. Further, she felt stuck in the relationship because of her dependence on Appellant as the sole financial provider.

On cross-examination, defense counsel attempted to weaken the victim's credibility by suggesting that her testimony was inconsistent. Defense counsel suggested that the victim testified that Appellant used his arm to perform the chokehold, but she told Trooper Bivens that Appellant used both his hands when attacking her. The victim clarified that Appellant's arm had been across her throat while both his hands were applying pressure to his grip. N.T. 38, 55.

Shortly after the victim disclosed her abuse on November 14, 2018, Trooper Bivens arrested Appellant. During the arrest, Trooper Bivens said, "I'm here on a domestic violence strangulation." N.T. 67. Before Trooper Bivens could say anything else relating to the incident or victim, Appellant said

"this occurred over a month [ago]," and he could not believe Trooper Bivens was there talking to him. N.T. 67.

Prior to trial, the trial court denied Appellant's motion in limine to exclude the victim's photographs of her injuries. The jury found Appellant guilty of strangulation and two counts of simple assault, and the trial court found Appellant guilty of the summary offense of harassment. Following sentencing, Appellant filed timely post-sentence motions, which the court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal:

I. Whether the evidence was insufficient to support the jury's verdict of guilty as to the charge of strangulation?

II. Whether the verdict of guilty as to the charge of strangulation was against the weight of the evidence presented at trial?

III. Whether the trial court erred in allowing the admission of photographs purportedly taken by the alleged victim?

Appellant's Brief at 6.

In his first argument, Appellant challenges the sufficiency of the evidence underlying his conviction for strangulation. When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances

established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to accord to each witness's testimony and to believe all, part or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015). Furthermore, "the uncorroborated testimony of a victim, if believed by the trier of fact, is sufficient to convict a defendant . . ." ***Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa. Super. 2018).

A person commits the offense of strangulation if he "knowingly or intentionally impedes the breathing or circulation of the blood of another person by . . . applying pressure to the throat or neck." 18 Pa.C.S.A. § 2718(a)(1). Here, the victim testified that Appellant attacked and choked her to the point that she had been unable to breathe, causing sustained injuries. The Commonwealth also presented photographs of the victim's injuries as well as Appellant's admission to a state trooper that he was aware of the incident. Viewed in the light most favorable to the Commonwealth, this

evidence was more than sufficient to support Appellant's conviction for strangulation.

In his second issue, Appellant argues the guilty verdict on strangulation was against the weight of the evidence. Our Supreme Court has instructed:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation marks omitted). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). This Court does not step into the shoes of the trial court to revisit the question of whether the verdict was against the evidence. Rather, our task is to "analyze whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Clay*, 64 A.3d at 1056. A new trial should only be awarded "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Id.* at 1055.

Here, during trial, the jury heard the victim testify that Appellant strangled her to the point she could not breathe and had lasting injuries. The jury also saw the photographs taken by the victim depicting the injuries caused by Appellant's act. Further, the jury listened to Trooper Bivens testify that the injuries depicted in the photographs were consistent with strangulation. In response to this evidence, defense counsel cross-examined both the victim and Trooper Bivens as to the alleged discrepancy between the victim's statement to the trooper and her trial testimony. Counsel also suggested that the photocopies of the victim's photographs were not authentic because she deleted the originals from her cell phone. The jury, as the sole finder of fact and judge of each witness's credibility, weighed this evidence and found the Commonwealth's evidence credible. The trial court observed that the "inconsistencies in the Commonwealth's evidence did not strike the court as particularly significant, and in any event were for the jury to resolve in evaluating the strength of the prosecution, as was the import, if any, to be accorded the photographs. Accordingly, the court did not find the verdict shocking, as being contrary to the weight of the evidence." We conclude that this determination was well within the trial court's discretion.

Finally, Appellant argues that the trial court erred by admitting the victim's photographs of her injuries into evidence, challenging authenticity, the fact the originals were destroyed, and that the originals had to be produced. The admissibility of evidence is a matter within the sole discretion

of the trial court. ***Commonwealth v. Woeber***, 174 A.3d 1096, 1100 (Pa. Super. 2017). We conclude the trial court acted within its discretion by admitting the photographs.

Under Pennsylvania Rule of Evidence 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. The comment to the rule notes that "[t]his rule corresponds to the common law 'best evidence rule." Comment, Pa.R.E. 1002. "For electronically stored information, 'original' means any printout—or other output readable by sight—if it accurately reflects the information. An 'original' of a photograph includes the negative or a print from it." Pa.R.E. 1001(d).

"A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003. "In those cases where the opposing party raises a genuine question as to the authenticity or fairness of using a duplicate, the trial court may require the production of the original under this rule." Comment, Pa.R.E. 1003. Finally, under Pennsylvania Rule of Evidence 1004, "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith." Pa.R.E. 1004(a).

Here, the victim authenticated the photographs by testifying that she took the photographs with her cell phone and made photocopies of the photographs at a Walmart. Pa.R.E. 901(a)(1) (item may be authenticated by a "witness with knowledge," through "testimony that an item is what it is claimed to be"). Second, the prints introduced at trial qualified as "originals" under Pa.R.E. 1001(d). In this regard, a print of a photograph from a cellphone is no less an "original" than a print of a photograph from a film. Third, had the photographs not qualified as originals, they could be considered the functional equivalents of duplicates, sufficient under the circumstances to satisfy the purposes under Pa.R.E. 1002 for admission. Finally, given that the victim provided a plausible explanation for the unavailability of the photographs on her cellphone, the photographs would have been admissible under Pa.R.E. 1004 because the originals were not destroyed in bad faith.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/08/2021

- 10 -