J-S08034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRAVON M. JOHNSON | : | |
| | : | |
| Appellant | : | No. 1095 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 29, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001673-2018

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MARCH 16, 2021**

Appellant Travon Johnson appeals from the judgment of sentence entered in the Court of Common Pleas of Dauphin County on July 29, 2020, following a jury trial. We affirm.

The trial court set forth the relevant procedural history and facts herein as follows:

> On March 13, 2018, Appellant was charged with Aggravated Assault, Kidnapping of Minor, Concealment of Whereabouts of Child, Endangering Welfare of Children, and Terroristic Threats. Following a jury trial held on February 10-11, 2020, Appellant was found guilty of two counts of Aggravated Assault, [1,2] Concealment of Whereabouts of Child,[3] Endangering Welfare of Children,[4] and Terroristic Threats.[5]
> On July 29, 2020, Appellant was sentenced. On August 11 2020, an amended sentencing Order was filed, sentencing Appellant to five (5) to ten (10) years in state prison at count 1, count 3 merged into count 2 and two (2) years of state supervision

---

[*] Former Justice specially assigned to the Superior Court.

at counts 4, 5, and 6 to run consecutive to each other and consecutive to count 2.[6]

No post-sentence motions were filed. On August 25, 2020, this Court received a timely Notice of Appeal filed with the Superior Court of Pennsylvania. This Court ordered Appellant on August 31, 2020, to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied with said Order on September 17, 2020.

### **Factual Background**

The following facts were established at a jury trial held on February 10-11, 2020. (Notes of Testimony, Jury Trial, 2/10-11/20).[7]

On the night of March 10, 2018, Bianca Jones[8] went to a club in D.C. with her friends. (N.T., 93). Ms. Jones had Appellant watch her children while she was gone. (N.T., 93-94). Her son was picked up the same night by his father. (N.T., 9 5). This left Appellant to watch Ms. Jones' one-year-old daughter, DC, overnight. (N.T., 92; 95). Ms. Jones began having issues with Appellant while she was still out. (N.T., 98-100). Appellant became upset and began to threaten Ms. Jones. (N.T., 100). Ms. Jones became afraid of Appellant and told Appellant to drop the child off with Ms. Jones' father. (N.T., 101-102). Appellant indicated that he did not want to do that. (N.T., 102). Because she was afraid of Appellant, Ms. Jones went to a friend's home instead of going directly to Appellant's home. (N.T., 102-103). Ms. Jones continued to speak with Appellant on the phone and could hear the child crying in the background. (N.T., 104). Appellant began to threaten the child. (N.T., 105). Ms. Jones then called 911 around 7:30 o'clock a.m. (N.T., 106-107).

On March 11, 2018, around 7:30 o'clock a.m., Officer Uriah Aviles[9] received a dispatch regarding a possible kidnapped child. (N.T., 145). The child in this case, DC, was a one-year-old child at the time of this incident. (N.T., 92). Officer Aviles responded to 336 Cresson Street, but received no response from anyone possibly in the residence. (N.T., 146-147). Officer Aviles then responded to an address in Lower Paxton Township to meet with the mother of the child, Ms. Jones. (N.T., 147). Officer Aviles then transported Ms. Jones to the Harrisburg police station to speak with a detective. *Id.*

Detective Richard Iachini[10] was then assigned to this case. (N.T., 189). Detective Iachini interviewed Ms. Jones at the police

station. *Id.* Ms. Jones clarified to Detective Iachini that Appellant had permission to watch the child overnight. (N.T., 190).

During the interview with Detective Iachini, Ms. Jones received multiple phone calls from Appellant. (N.T., 192). Ms. Jones put her cell phone on speaker. *Id.* In his testimony, Detective Iachini described Appellant as very belligerent and cruel during these phone calls. (N.T., 193). Appellant was laughing and threatening Ms. Jones during the phone calls. *Id.* Appellant threatened to kill both Ms. Jones and the child. (N.T., 193-194). Appellant indicated that he was upset because Ms. Jones did not check in with him while she was out. (N.T., 197). During these phone conversations, Appellant never mentioned that the child had injuries or had fallen. (N.T., 194). Ms. Jones requested that Appellant return her child, but Appellant refused to do so. (N.T., 113; 195).

After remaining at the Harrisburg police station from around 9:00 o'clock a.m. until around 2:00 o'clock p.m., she went to her father's home in Steelton, Pennsylvania. (N.T., 198).

Police attempted to locate Appellant through the cell phone company but were only able to locate a large radius. (N.T., 199-200). Without Ms. Jones' knowledge, police set up surveillance outside of Ms. Jones' father's apartment. (N.T., 200-201). This surveillance team included Detective Iachini, Lieutenant Wealand, and Detective Fustine. *Id.* Unknown to this surveillance team, Cloreatha Conway, [11] Appellant's mother, contacted Ms. Jones and told her to come pick up the child at Ms. Conway's home. (N.T., 118; 260). After this call, the surveillance team observed a woman pick up Ms. Jones in a vehicle. (N.T., 202). The surveillance team followed Ms. Jones and the woman to Ms. Conway's home. *Id.* Ms. Jones eventually exited the home with her child, DC. *Id.* Detective Iachini approached to check on the condition of the child. (N.T., 202-203). The child was asleep but had visible injuries to her face. (N.T., 203). The surveillance team escorted Ms. Jones and her child to the Harrisburg hospital. (N.T., 204). Physicians eventually decided to transfer the child to the Hershey hospital. *Id.*

At the Hershey hospital, Dr. Kent Hymel,[12] a member of the Child Protective Team, examined the child. (N.T., 152; 157-158). Dr. Hymel proceeded to document and interpret the child's injuries. (N.T., 159). According to Dr. Hymel's testimony, the child's injuries were not consistent with a fall down the stairs. (N.T., 168). On the contrary, the injuries were highly specific with abuse. *Id.* Dr. Hymel explained that a child's reflexive movements would have protected the child's ears and most of her face if she

had fallen down the stairs. (N.T., 167). Here, the child's injuries included direct trauma to her ears and eyes. (N.T., 159-163). This included linear bruises, suggesting an open hand had caused the injuries. (N.T., 161). In a fall, the ears are the least likely to get bruised and the eyes are usually protected. (N.T., 161). Further, there was no direct trauma to the nose. (N.T., 163). Dr. Hymel's assessment concluded that the child had been physically abused. (N.T., 178). However, nothing in Dr. Hymel's report referenced serious bodily injury. (N.T., 178).

Kelsi Pipes, a Children and Youth caseworker, followed up three or four days after the incident to take photographs of the child's facial injuries. (N.T., 180-181).

Detective Iachini was able to locate and speak with Appellant the next day, March 12, 2018. (N.T., 205). Appellant told Detective Iachini that the child fell down the stairs and that one scratch near her lip was present before he had the child. (N.T., 206-210). Appellant told Detective Iachini that he treated the child's injuries with witch hazel and a cold compress. (N.T., 222). Although other people were present to witness this alleged fall down the stairs, Appellant refused to give Detective Iachini any names of these possible witnesses. (N.T., 206).

Zalia Moore,[13] niece of the Appellant, testified at trial that she witnessed the child fall down the stairs after chasing a balloon. (244-248). Ms. Moore never called for medical help for the child nor did she contact police at any time to indicate that she was a witness to the child's injuries or that her uncle, the Appellant, did not injure the child. (N.T., 254-255). George Davis,[14] a friend of the Appellant, also testified that the child fell down the stairs after playing with a balloon. (N.T., 274). Mr. Davis testified that he did not see any bruises on the child. (N.T., 279).

---

[1] 18 Pa.C.S.A. § 2702(A)(9)
[2] 18 Pa.C.S.A. § 2702(A)(8)
[3] 18 Pa.C.S.A. § 2909(A)
[4] 18 Pa.C.S.A. § 4304(A)( I)
[5] 18 Pa.C.S.A. § 2706(A)(I)
[6] Amended Sentencing Order, 8/1 1/20
[7] Hereinafter, "N.T."
[8] Hereinafter, "Ms. Jones"
[9] Hereinafter, "Officer Aviles"
[10] Hereinafter, "Detective Iachini"
[11] Hereinafter, "Ms. Conway"
[12] Hereinafter, "Dr. Hymel"
[13] Hereinafter, "Ms. Moore"

[14] Hereinafter, "Mr. Davis"

Trial Court Opinion, filed 10/22/20, at 1-5.

On July 29, 2020, Appellant was sentenced to an aggregate term of five (5) years to ten (10) years in prison followed by six years of consecutive state supervision. Appellant filed a timely notice of appeal on August 25, 2020. On September 17, 2020, Appellant filed his concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its Rule 1925(a) Opinion on October 22, 2020.

In his appellate brief, Appellant presents the following issue for our review:

> Was the evidence presented at trial insufficient to prove beyond a reasonable doubt that Appellant committed the offense of Aggravated Assault when the evidence failed to establish that he was the one who caused the injury to the child and the expert testimony failed to establish serious bodily injury?

Appellant's Brief at 5.

This Court's standard of review of the sufficiency of the evidence is well-settled:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Williams*, 176 A.3d 298, 305-06 (Pa.Super. 2017) (citations and quotation marks omitted). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525-26 (Pa.Super. 2016). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Tejada*, 107 A.3d 788, 792-93 (Pa.Super. 2015).

Herein, Appellant's issue is twofold. First, Appellant maintains the Commonwealth failed to present sufficient evidence to prove Appellant's actions or inaction was the actual cause of the bruising to D.C.'s face; therefore, both Aggravated Assault convictions should be vacated. Appellant argues the sole evidence the Commonwealth introduced at trial pertaining to causation was the testimony of Ms. Jones who admitted she had lied to police, delayed seeking the return of D.C., and that other individuals had access to D.C. during the relevant time period. Appellant's Brief at 17-18.

At trial, Ms. Jones explained that her delay for two to three hours in retrieving D.C. from Appellant's mother, whom she knew and trusted, was due to the fact that she was not driving and did not have a ride. She also knew Appellant wasn't with the child at that time. N.T. 2/10/20, at 119-120. Ms. Jones also admitted she had lied to the 911 operator when she indicated her

daughter had been taken and that, in addition to not having a ride, she was too intoxicated to pick up her daughter immediately. *Id*. at 136-37.

Appellant further posits the Commonwealth's evidence was insufficient to show the injuries the child sustained were "serious" for the purposes of 18 Pa.C.S.A. § 2702(a)(9) and 18 Pa.C.S.A. § 2301. Appellant reasons that based upon the testimony of Ms. Jones and Dr. Hymel, the "only" injuries observed on the eighteen month old child were "quite extensive and confluent facial bruising" and "facial and head bruising." Appellant also stresses Dr. Hymel believed the child acted "normally" upon examination. Appellant's Brief at 18-19.

Under the relevant subsections of the Aggravated Assault statute, a person is guilty of Aggravated Assault if he or she: "(8) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to a child less than six years of age, by a person 18 years of age or older; or (9) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a child less than 13 years of age, by a person 18 years of age or older." 18 Pa.C.S.A. § 2702(a)(8)-(9). Further, serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S. § 2301.

As the trial court stresses, Appellant's Aggravated Assault convictions do not require a showing that Appellant caused D.C. substantial bodily injury

under the aforementioned statute. Appellant was found guilty of Aggravated Assault – Attempt to Cause Serious Bodily Injury and Aggravated Assault-Caused Bodily Injury. Under the first charge, the Commonwealth had the burden to establish Appellant attempted to cause serious bodily injury, not that Appellant actually caused serious bodily injury. Moreover, to establish the second charge, the Commonwealth had the burden to prove that Appellant caused bodily injury, not that he caused substantial bodily injury. *See* Trial Court Opinion, filed 10/22/20, at 7-8.

Notwithstanding the foregoing, Dr. Hymel explained that D.C's left ear was "pretty severely bruised." N.T. 2/10/20, at 164. He further stated that one could have had a normal CT scan and still have suffered a concussion, or a brief loss of consciousness from head trauma. *Id*. at 172.

In addition, in finding the Commonwealth had shown Appellant was the cause of D.C.'s bodily injuries, the trial court observed the following:

> As stated above, the Commonwealth presented evidence, through the testimony of Ms. Jones, Dr. Kent Hymel, and Detective Iachini, that the child had injuries to her facial area. (N. T., 121, 159, 203). Here, the child's injuries included direct trauma to her ears and eyes. (N.T., 159- 163). This included linear bruises, suggesting an open hand had caused the injuries. (N.T., 161). Dr. Hymel testified that these injuries were not consistent with a fall and were consistent with abuse. (N.T., 168-178). Dr. Hymel's assessment does not include a reference to or indication of seriously or substantial bodily injury. (N. T., 178). However, the standard here is bodily injury. The injuries sustained by the child constitute bodily injury. Therefore, we believe the Commonwealth presented sufficient evidence for the jury to find that Appellant caused bodily injury, as required under the relevant statute, beyond a reasonable doubt.

Appellant next argues that the Commonwealth failed to establish that Appellant was the one who caused the injuries to the child. We disagree. The Commonwealth presented testimony, through Dr. Hymel, that proved the child's injuries were not consistent with a fall down the stairs. (N.T., 168). On the contrary, the injuries were highly specific with abuse. *Id.* Dr. Hymel explained that a child's reflexive movements would have protected the child's ears and most of her face if she had fallen down the stairs. (N.T., 167). Here, the child's injuries included direct trauma to her ears and eyes. (N.T., 159-163). This included linear bruises, suggesting an open hand had caused the injuries. (N.T., 161). In a fall, the ears are the least likely to get bruised and the eyes are usually protected. (N.T., 161). Further, there was no direct trauma to the nose as one would expect from facial injuries consistent with a fall down the stairs. (N.T., 163). Dr. Hymel's assessment concluded that the child had been physically abused. (N.T., 178). Appellant is the one who was watching the child. (N.T., 93). The injuries to the child's ears and eyes were not present when Ms. Jones left the child with Appellant. (N. T., 210). Ms. Jones could hear the child crying while on the phone with Appellant. (N.T., 104). Additionally, Appellant actually threatened to harm the child in a phone conversation with Ms. Jones because he was upset with her. (N.T., 98-100, 105). Therefore, we believe the Commonwealth presented sufficient evidence for the jury to find that Appellant was the one who caused the child's injuries beyond a reasonable doubt.

Further, the testimony presented by the Commonwealth is not so inherently unreliable as to require the exception to the general rule that the jury is the sole arbiter of the facts. (*See* ***Commonwealth v. Karkaria***, 625 A.2d [1167,] 1170 [Pa. 1993])

Trial Court Opinion, filed 10/22/20 at 8-9 (footnotes omitted).

In light of all of the foregoing and following our review of the record, we find no error in the trial court's analysis. Although Appellant stresses his witnesses testified that the child's injuries were sustained in a fall at a party and that others had been caring for her in addition to Appellant, the testimony of Ms. Jones, Detective Iachini and Dr. Hymel was sufficient for the jury, as

the finder of fact, to have found Appellant guilty of the two counts of Aggravated Assault. *Tejeda*, *supra*. An appellate court will not substitute its assessment of credibility for that of the finder of fact. *Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa.Super. 2009). Thus, Appellant's issue lacks merit.

Judgment of Sentence Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/16/2021